ORIGINAL

JUDITH A. PHILIPS
Acting United States Attorney
District of Hawaii

CRAIG S. NOLAN
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: Craig.Nolan@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Dept. of Justice

THOMAS J. TYNAN
Trial Attorney
U.S. Dept. of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 768-1136
E-mail: Thomas.Tynan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
MAY 06 2021
at 2 o'clock and 45 min. P M
MICHELLE RYNNE, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. NO. CR 21 - 00061 JAO |
| ) | |
| Plaintiff, ) | [18 U.S.C. §§ 1343 and 1957] |
| ) | |
| vs. ) | |
| ) | |
| MARTIN KAO, ) | |
| ) | |
| Defendant. ) | |

INDICTMENT

The Grand Jury charges:

//

//

//

## General Allegations

At all times relevant to this Indictment:

*The Defendant and the Navatek Entities*

1.  MARTIN KAO, the defendant, was a resident of Honolulu, Hawaii. KAO owned 99% of Navatek LLC, and served as its Chief Executive Officer.

2.  Navatek LLC was a research, engineering, design, and innovations company that specialized in novel systems for the Department of Defense ("DOD") and other partners in academia and other scientific fields. Nearly all of Navatek LLC's revenue was from the DOD. On or about July 27, 2020, Navatek LLC changed its name to Martin Defense Group, LLC.

3.  Navatek LLC was the sole member and manager of Navatek CFD Technologies LLC, Navatek Lifting Body Technologies LLC, Navatek Alternative Energy Technologies LLC, and Navatek SHC LLC (collectively, the "Navatek Subsidiaries"). In effect, these entities were subsidiaries of Navatek LLC.

*The Small Business Administration and the CARES Act*

4.  The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of

small businesses and by assisting in the economic recovery of communities after disasters.

5. The SBA enabled and provided for loans through banks, credit unions, and other lenders that had government-backed guarantees. The SBA also provided direct loans.

6. In or about March 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering negative economic effects caused by the COVID-19 pandemic. The CARES Act established several new programs and provided for expansion of others, including programs created and administered by the SBA.

*The Paycheck Protection Program*

7. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or about April 2020, Congress authorized over $300 billion in additional PPP funding.

8. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its

authorized representative) to acknowledge the program rules and make specified affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the loan applicant was required to state, among other things, its: (i) average monthly payroll expenses; and (ii) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation supporting their payroll expenses.

9.     A PPP loan application was required to be processed by a participating lender, such as a financial institution. If a PPP loan application was approved, the lender funded the PPP loan using its own moneys, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

10.    PPP loan proceeds were required to be used by the business for specified permissible business expenses, including payroll costs, interest on mortgages, rent, and utilities.

*Relevant Financial Institutions*

11.    Bank 1 was a Hawaii-based community bank. Bank 1 was an approved SBA lender and participated as a lender in the PPP. Navatek LLC maintained an account at Bank 1.

12. Bank 2 was a mainland-based bank focused on online banking services. Bank 2 was an approved SBA lender and participated as a lender in the PPP. Neither KAO nor Navatek LLC maintained accounts at Bank 2.

13. Bank 3 was a Hawaii-based regional bank. Bank 3 was an approved SBA lender and participated as a lender in the PPP. KAO maintained a personal account at Bank 3.

14. Bank 4 was a mainland-based national bank. KAO and Navatek LLC maintained investment accounts at Bank 4.

Counts 1–3
Wire Fraud
(18 U.S.C. § 1343)

15. The allegations contained in Paragraphs 1 through 14 of this Indictment are hereby realleged and incorporated by reference.

16. From in or around March 2020 to in or around July 2020, within the District of Hawaii and elsewhere, MARTIN KAO, the defendant, knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money and property from the PPP and its participating lenders by means of materially false and fraudulent pretenses, representations, and promises, and transmitted and caused to be transmitted by means of interstate wire, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

*The Purpose of KAO's Scheme to Defraud*

17.　In devising the scheme, KAO's purpose was to obtain money for which KAO, Navatek LLC, and the Navatek Subsidiaries were not eligible to receive under the PPP by submitting and causing to be submitted false and fraudulent PPP loan applications and representations to Bank 1, Bank 2, and Bank 3. As a result of the scheme, KAO fraudulently obtained more than $12.8 million in PPP funds for his companies and transferred approximately $2 million of those PPP funds to himself for his personal benefit.

*KAO's Scheme to Defraud*

In furtherance of KAO's scheme to defraud:

KAO's PPP Loan Application to Bank 1

18.　On or about April 3, 2020, KAO submitted and caused to be submitted to Bank 1 a PPP loan application in the name and tax identification number of Navatek LLC signed by KAO seeking the maximum amount of $10 million in PPP funds and containing materially false and fraudulent representations as to average monthly payroll, number of employees, and ownership of or common management with any other business (hereinafter, the "Bank 1 PPP loan application").

19.　In the Bank 1 PPP loan application, KAO falsely and fraudulently stated that Navatek LLC had an average monthly payroll of $4,072,000. KAO's

then well knew, Navatek LLC and the Navatek Subsidiaries, including Navatek CFD Technologies LLC, had previously received the Bank 1 PPP loan based on an average monthly payroll that included the average monthly payroll stated in the Bank 2 PPP loan application that KAO submitted.

30. In the Bank 2 PPP loan application, KAO falsely and fraudulently stated that Navatek CFD Technologies LLC had 140 employees. KAO's representation was false and fraudulent because, as KAO then well knew, Navatek CFD Technologies LLC employed during calendar year 2019 approximately 40 employees. KAO's representation was also false and fraudulent because, as KAO then well knew, Navatek LLC and the Navatek Subsidiaries, including Navatek CFD Technologies LLC, had previously received the Bank 1 PPP loan based on a stated number of employees that included the 140 employees stated in the Bank 2 PPP loan application that KAO submitted.

31. In the Bank 2 PPP loan application, KAO falsely and fraudulently responded "No" to Question 3 that asked: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" KAO's response was false and fraudulent because, as KAO then well knew, KAO owned and managed the Navatek Subsidiaries, including Navatek CFD Technologies LLC, through his ownership and control of Navatek LLC. By responding falsely, KAO avoided listing all such businesses and describing the

representation was false and fraudulent because, as KAO then well knew, for the calendar year of 2019, Navatek LLC and the Navatek Subsidiaries had a combined average monthly payroll of approximately $829,385, as calculated by Navatek personnel.

20. In the Bank 1 PPP loan application, KAO falsely and fraudulently stated that Navatek LLC had 490 employees. KAO's representation was false and fraudulent because, as KAO then well knew, Navatek LLC and the Navatek Subsidiaries collectively employed during calendar year 2019 approximately 140 employees.

21. In the Bank 1 PPP loan application, KAO falsely and fraudulently responded "No" to Question 3 that asked: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" KAO's response was false and fraudulent because, as KAO then well knew, KAO owned and managed the Navatek Subsidiaries through his ownership and control of Navatek LLC. By responding falsely and fraudulently, KAO avoided listing all such businesses and describing the relationship of the businesses, as required for an affirmative response to Question 3.

22. In the Bank 1 PPP loan application, KAO falsely and fraudulently certified that, from February 15, 2020 to December 31, 2020, Navatek LLC "has not and will not receive another loan under the [PPP]."

23. In the Bank 1 PPP loan application, KAO falsely and fraudulently certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

24. In support of the Bank 1 PPP loan application, KAO submitted and caused to be submitted a false and fraudulent spreadsheet used to calculate the applicant's (Navatek LLC's) average monthly payroll and number of employees that, as KAO then well knew, included costs for employees that did not exist and were not eligible for inclusion.

25. From in or around April 2020 to in or around July 2020, KAO made additional false and fraudulent representations to Bank 1 in support of the Bank 1 PPP loan application. KAO intended these representations to pressure Bank 1 into quickly and without scrutiny approving the Bank 1 PPP loan application and to conceal the scheme.

26. By no later than April 18, 2020, Bank 1 issued and funded the requested PPP loan by depositing $10 million into Navatek LLC's business checking account (XXXXXXXX9145) at Bank 1.

### KAO's PPP Loan Application to Bank 2

27. On or about April 20, 2020, KAO submitted and caused to be submitted to Bank 2 a PPP loan application in the name and tax identification

number of Navatek CFD Technologies LLC signed by KAO seeking $2,841,490 in PPP funds and containing materially false and fraudulent representations as to average monthly payroll, number of employees, and ownership of or common management with any other business (hereinafter the "Bank 2 PPP loan application").

28. In an email accompanying the Bank 2 PPP loan application, KAO falsely and fraudulently stated to a President of Bank 2: "[W]e did submit an application with a local Hawaii bank for a completely separate company, and that is the one that got fumbled." KAO's representation in the email was false and fraudulent because, as KAO then well knew, the PPP application to which he referred in the email had been approved and funded by Bank 1, and the applicant for the Bank 1 PPP loan was not a "completely separate company." In fact, the applicant for the first PPP loan was Navatek LLC, the entity that owned Navatek CFD Technologies LLC.

29. In the Bank 2 PPP loan application, KAO falsely and fraudulently stated that Navatek CFD Technologies LLC had an average monthly payroll of $1,136,596. KAO's representation was false and fraudulent because, as KAO then well knew, for the calendar year of 2019, Navatek CFD Technologies LLC had an average monthly payroll of approximately $276,450, as calculated by Navatek personnel. KAO's representation was also false and fraudulent because, as KAO

9

relationship of the businesses as required for an affirmative response to Question 3, and thereby avoided the possibility that Bank 2 and the SBA would determine that Navatek CFD Technologies LLC was not eligible for a PPP loan due to the Bank 1 PPP loan to Navatek LLC.

32. In the Bank 2 PPP loan application, KAO falsely and fraudulently certified that, from February 15, 2020 to December 31, 2020, Navatek CFD Technologies LLC "has not and will not receive another loan under the [PPP]." KAO's representation was false and fraudulent because, as KAO then well knew, Navatek CFD Technologies LLC had approximately two days earlier received the Bank 1 PPP loan in the amount of $10 million in the name of Navatek LLC.

33. In the Bank 2 PPP loan application, KAO falsely and fraudulently certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

34. From in or around April 2020 to in or around July 2020, KAO made additional false and fraudulent representations to Bank 2 and others in support of the Bank 2 PPP loan application and to conceal the scheme.

35. On or about May 6, 2020, Bank 2 issued and funded the requested PPP loan by depositing $2,841,490 into Navatek LLC's account (XXXXXXXX9145) at Bank 1.

36. On or about May 4, 2020, after Bank 2's approval of the PPP loan application and funding of the Bank 2 PPP loan, KAO altered the previously-submitted, fully-executed promissory note for the Bank 2 PPP loan by deleting all references to the PPP. KAO then provided the altered note to others to conceal his scheme to defraud.

### KAO's PPP Loan Application to Bank 3

37. On or about April 21, 2020, KAO submitted and caused to be submitted to Bank 3 a PPP loan application in the name and tax identification number of Navatek SHC LLC signed by KAO seeking $2,852,839 in PPP funds and containing materially false and fraudulent representations as to average monthly payroll, number of employees, and ownership of or common management with any other business (hereinafter the "Bank 3 PPP loan application").

38. In an email accompanying the Bank 3 PPP loan application, KAO falsely and fraudulently stated to a Vice President of Bank 3:

> As we discussed, we dropped the ball with timing and process the first time. Our entire company structure is complicated to say the least. With operations/offices/employees and entities all over the country, we really got confused on how to apply. Long story…short…we discussed with SBA and figured it out…too late. We'll [sic] here is hopefully our second chance. The SHC Entity is our (Salaries Hawaii Company) entity. We are applying under that entity alone and told that is the way to correctly do it. So the application is correct and all calculation have been reviewed to eliminate all salary amounts in excess of $100K.

KAO's representations in the email were false and fraudulent because, as KAO then well knew, the PPP loan application to which he referred in the email had been approved and funded by Bank 1.

39. In the Bank 3 PPP loan application, KAO falsely and fraudulently stated that Navatek SHC LLC had an average monthly payroll of $1,141,136. KAO's representation was false and fraudulent because, as KAO then well knew, for the calendar year of 2019 and through the application date, Navatek SHC LLC had no payroll. KAO's representation was also false and fraudulent because, as KAO then well knew, Navatek LLC and the Navatek Subsidiaries had previously received the Bank 1 PPP loan based on an average monthly payroll that included the average monthly payroll stated in the Bank 3 PPP loan application that KAO submitted.

40. In the Bank 3 PPP loan application, KAO falsely and fraudulently stated that Navatek SHC LLC had 140 employees. KAO's representation was false and fraudulent because, as KAO then well knew, Navatek SHC LLC had no employees during calendar year 2019 and through the application date. KAO's representation was also false and fraudulent because, as KAO then well knew, Navatek LLC and the Navatek Subsidiaries had previously received the Bank 1 PPP loan based on a stated number of employees that included the 140 employees stated in the Bank 3 PPP loan application that KAO submitted.

13

41. In the Bank 3 PPP loan application, KAO falsely and fraudulently responded "No" to Question 3 that asked: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" KAO's response was false and fraudulent because, as KAO then well knew, KAO owned and managed the Navatek Subsidiaries, including Navatek SHC LLC, through his ownership and control of Navatek LLC. By responding falsely, KAO initially avoided listing all such businesses and describing the relationship of the businesses as required for an affirmative response to Question 3, and thereby initially avoided the possibility that Bank 3 and the SBA would determine that Navatek SHC LLC was not eligible for a PPP loan due to the Bank 1 PPP loan to Navatek LLC.

42. In the Bank 3 PPP loan application, KAO falsely and fraudulently certified that, from February 15, 2020 to December 31, 2020, Navatek SHC LLC "has not and will not receive another loan under the [PPP]." KAO's certification was false and fraudulent because, as KAO then well knew, Navatek SHC LLC had approximately three days earlier received the Bank 1 PPP loan in the name of Navatek LLC.

43. In the Bank 3 PPP loan application, KAO falsely and fraudulently certified "that the information provided in this application and the information

provided in all supporting documents and forms is true and accurate in all material respects."

44. From in or around April 2020 to in or around July 2020, KAO made additional false and fraudulent statements to Bank 3 in support of the Bank 3 PPP loan application, false and fraudulent representations and certifications in revised submissions of the Bank 3 PPP loan application, and false and fraudulent statements to Bank 3 and others to conceal the scheme.

45. After a Vice President at Bank 3 informed KAO that Navatek SHC LLC's tax identification number was different from those stated on payroll forms submitted in support of the loan application, KAO falsely and fraudulently stated in an email to the Vice President: "[T]he varying entities have employees, but all payroll is 'cleared' through SHC (Salaries Hawaii Company, LLC)." KAO's statement was false and fraudulent because, as KAO then well knew, payroll was not "cleared" through Navatek SHC LLC. In response to KAO's email, the Vice President instructed KAO to submit applications in the names of the entities that paid the employees.

46. After KAO submitted revised Bank 3 PPP loan applications in the names and tax identification numbers of Navatek LLC and Navatek CFD Technologies LLC, Bank 3 determined through SBA systems that each of those two entities had already been approved for a PPP loan. When so advised by the

Bank 3 Vice President, KAO falsely and fraudulently stated in an email to the Vice President on or about April 29, 2020: "After much a do [sic] last night and this morning, we have made no progress on getting to the bottom of this and with SBA on getting the actual approval notifications or numbers." KAO then abandoned his efforts to obtain additional PPP loans from Bank 3.

### The Interstate Wires

47. In executing the scheme, KAO transmitted and caused to be transmitted by means of interstate wire, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | 04/03/2020 | Submission of a PPP Application to Bank 1 via Internet Portal |
| 2 | 04/20/2020 | Submission of a PPP Application to Bank 2 via Email |
| 3 | 04/21/2020 | Submission of a PPP Application to Bank 3 via Email |

All in violation of Title 18, United States Code, Sections 1343 and 2.

### Counts 4-8
### Money Laundering
### (18 U.S.C. § 1957)

48. The allegations contained in Paragraphs 1 through 47 of this Indictment are hereby realleged and incorporated by reference.

49. On or about the dates set forth below, within the District of Hawaii and elsewhere, MARTIN KAO, the defendant, knowingly engaged and attempted

16

to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, namely the transfer of funds from Bank 1 account number XXXXXX9145, such property having been derived from a specified unlawful activity, namely Wire Fraud, in violation of Title 18, United States Code, Section 1343, as set forth below:

| Count | Approximate Date | Description of Transaction | Disposition of Funds | Transaction Amount |
|---|---|---|---|---|
| 4 | 04/21/2020 | Check no. 31029 payable to Navatek LLC | Deposited into Bank 4 account no. XXX-X3506 | $2,000,000 |
| 5 | 04/22/2020 | Check no. 30986 payable to MARTIN KAO | Deposited into Bank 4 account no. XXX-X2641 | $2,000,000 |
| 6 | 04/29/2020 | Check no. 31124 payable to Navatek LLC | Deposited into Bank 4 account no. XXX-X3506 | $3,000,000 |
| 7 | 05/07/2020 | Check no. 31127 payable to Navatek LLC | Deposited into Bank 4 account no. XXX-X3506 | $3,000,000 |
| 8 | 05/18/2020 | Check no. 31249 payable to MARTIN KAO | Deposited into Bank 3 account no. XX-XX1787 | $20,200 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

First Forfeiture Notice

50.    The allegations contained in all paragraphs of Counts 1 and 2 of this Indictment are hereby realleged and incorporated by reference for the purpose of

noticing forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

51.  The United States hereby gives notice to the defendant that, upon conviction of the offenses charged in Counts 1 and 2 of this Indictment, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), of any and all property, real or personal, that constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 1343, alleged in Counts 1 and 2 of this Indictment, including but not limited to a sum of money equal to at least $12,841,490 in United States currency.

52.  If by any act or omission of the defendant, any of the property subject to forfeiture described in the preceding paragraph herein:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property up to the value of the property described above in the preceding paragraph,

pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

## Second Forfeiture Notice

53. The allegations contained in all paragraphs of Counts 4 through 8 of this Indictment are realleged and incorporated by reference for the purpose of noticing forfeitures pursuant to Title 18, United States Code, Section 982.

54. The United States hereby gives notice to the defendant that, upon conviction of the offenses charged in Counts 4 through 8 of this Indictment, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 982(a)(1), of any and all property, real or personal, involved in the violations of Title 18, United States Code, Section 1957, alleged in Counts 4 through 8 of this Indictment, and all property traceable to such property.

55. If by any act or omission of defendant, any of the property subject to forfeiture described in the preceding paragraph herein:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to forfeiture of substitute property up to the value of the property described above in the preceding paragraph, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

DATED: May 6, 2021, at Honolulu, Hawaii.

A TRUE BILL

/s/ Foreperson

_____
FOREPERSON, GRAND JURY

_____
JUDITH A. PHILIPS
Acting United States Attorney
District of Hawaii

_____
CRAIG S. NOLAN
Assistant U.S. Attorney

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

_____
THOMAS J. TYNAN
Trial Attorney

United States v. Martin Kao
Indictment
Cr. No. CR 21-00061 JAO

20