UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 21-CR-00061LEK |
|  | ) |  |
| Plaintiff, | ) | September 7, 2022 |
|  | ) | 1:29 p.m. |
| vs. | ) |  |
|  | ) |  |
| MARTIN KAO, | ) |  |
|  | ) | U.S. District Court |
| Defendant. | ) | 300 Ala Moana Boulevard |
|  | ) | Honolulu, HI 96850 |
| _____ | ) |  |


TRANSCRIPT OF VIDEO TELECONFERNECE OF HEARING ON MOTION FOR
WITHDRAWAL OF NOT GUILTY PLEA AND TO PLEAD ANEW
BEFORE THE HONORABLE KENNTH J. MANSFIELD
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| For Plaintiff: | Craig S. Nolan, Esq. |
|---|---|
|  | U.S. Attorney's Office |
|  | 300 Ala Moana Boulevard, #6100 |
|  | Honolulu, HI 96850 |

| For the Plaintiff: | Jennifer Bilinkas, Esq. |
|---|---|
|  | U.S. Department of Justice |
|  | Criminal Division, Fraud Section |
|  | 1400 New York Avenue, N.W. |
|  | Washington, D.C.  20005 |

| For Defendant: | Victor J. Bakke, Esq. |
|---|---|
|  | 700 Bishop Street, Suite 2100 |
|  | Honolulu, HI 96813 |

| Transcription Service: | Jessica B. Cahill, CER/CET-708 |
|---|---|
|  | Maukele Transcribers, LLC |
|  | 467 Maukele Place |
|  | Wailuku, Maui, HI  96793 |
|  | Telephone: (808)244-0776 |


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1   SEPTEMBER 7, 2022                                    1:29 P.M.

2          THE CLERK:  United States District Court for the

3   District of Hawaii with the Honorable Kenneth J.  Mansfield.

4   United States Magistrate Judge presiding, is now in session.

5   Criminal number 21-00061LEK, United States of America v. Martin

6   Kao.  This hearing has been called for a change of plea hearing.

7   Counsel, please make your appearances for the record, starting

8   with the Government.

9          MR. NOLAN:  Good afternoon, Your Honor.  Craig Nolan

10  and Jennifer Bilinkas for the Government.

11         THE COURT:  Good afternoon to both of you.

12         MR. BAKKE:  And good afternoon, Your Honor.  Attorney

13  Victor Bakke behalf of Mr. Martin Kao, who is present.  We are

14  present by video in my conference, in my Your Honor.

15         THE COURT:  Okay.  Good afternoon to both of you as

16  well.  Mr. Bakke, is it your understanding that Mr. Kao intends

17  to plead guilty today to the indictment in this case?

18         MR. BAKKE:  Yes, Your Honor.  And we have no objection

19  to proceeding via the video teleconference, obviously, today.

20  And then also, the Prosecutor did prepare a consent to Rule 11

21  plea in the felony case.  I do have the written copy.

22         THE COURT:  Okay.

23         MR. BAKKE:  The Prosecutor and myself have signed it.

24  And I can have Mr. Kao sign it in front of the Court after the

25  Court goes over it with them and then we can file it with the

1    Court.

2         THE COURT:  That would be great.  Thank you very much.

3    We'll get to that in just a second.

4         Mr. Kao, before I can accept a guilty plea, I must

5    ensure that you understand what you are doing and that you are

6    pleading guilty freely and voluntarily.  I must also establish an

7    adequate factual basis to convict you of the charges against you.

8    In order to make this determination, I will be asking you several

9    questions this afternoon.  If you do not understand any questions

10   that I ask or any words that I use, would you please say so, sir?

11        THE DEFENDANT:  Yes, Your Honor.

12        THE COURT:  All right.  Thank you.

13        Can I ask the Courtroom manager to administer the oath

14   to Mr. Kao?

15        THE CLERK:  Yes, Your Honor.  Mr. Kao, please raise

16   your right hand.

17     MARTIN KAO, DEFENDANT, SWORN

18        THE COURT:  All right.  Thank you, sir.  You may be.

19        THE COURT:  Mr. Kao, what is your full name?

20        THE DEFENDANT:  Martin, middle initial Y, Kao K-A-O.

21        THE COURT:  And how old are you, sir?

22        THE DEFENDANT:  Forty-nine.

23        THE COURT:  How far did you go in school?

24        THE DEFENDANT:  Masters.

25        THE COURT:  Okay.  Have you taken any medication,

1  alcohol, or drugs of any kind today?

2          THE DEFENDANT:  No, sir.

3          THE COURT: All right.  Do you feel well and alert this

4  afternoon?

5          THE DEFENDANT: Yes, Your Honor.

6          THE COURT: Do you understand what is going on?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Okay.  Have you had enough time to consider

9  whether to plead guilty?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  And, Mr. Bakke, to the best of

12  your knowledge, is Mr. Kao fully competent to enter a valid plea

13  today?

14          MR. BAKKE:  Yes, Your Honor.

15          THE COURT:  All right.  Mr. Kao, if you choose to enter

16  a guilty plea in your case, you do have the right to do so before

17  a United States District Judge, and the District Judge assigned

18  to your case is District Judge Leslie Kobayashi.  If you consent,

19  though, you can enter your guilty plea before me, a U.S.

20  Magistrate Judge.  And if you do that, Judge Kobayashi will

21  sentence you at a later date.  Does that make sense to you?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Okay.  And is it your desire to waive your

24  right to change your plea before Judge Kobayashi and go ahead and

25  enter that plea before me this afternoon?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  And your attorney reference --

3   I think it's a two page form we have or maybe it's front and

4   back, entitled consent to Rule 11 plea in a felony case, which is

5   just written documentation of the discussion you and I just had.

6   Please take a second to review it.  If you have any questions for

7   Mr. Bakke.  We can give you privacy to have that discussion, but

8   I just need to ensure that you agree to that form and go ahead

9   and execute it.

10         THE DEFENDANT:  And just a typo on the second page, but

11  other than that, it's fine.

12         THE COURT:  Okay.  Can I ask what the typo is?  Is it

13  in your name or just so we could have a clear record?

14         MR. BAKKE:  It's on the second page you're on.  About

15  halfway down where it says district -- starting with District

16  Judge will then act on Magistrate Judge.  There's an equal sign

17  instead of an apostrophe.

18         THE COURT:  Okay.  That's not significant.  All right.

19  Thank you for pointing that out.  Otherwise, if that's acceptable

20  -- let me ask you, Mr. Kao, do you have any questions either for

21  me or for your attorney?

22         THE DEFENDANT: No, Your Honor.

23         THE COURT: All right.  Are you willing to execute that

24  form?

25         THE DEFENDANT: Yes, Your Honor.

1          THE COURT:  All right.  Please go ahead and do so.  And

2     then, Mr. Bakke, if you can file that with the Court after the

3     hearing.

4          MR. BAKKE:  Your Honor, may reflect the record reflect

5     he did sign it.  I also went over it thoroughly with him prior to

6     starting Court today.  So we will file that immediately after the

7     hearing.

8          THE COURT: Thank you.  And I do find that the Defendant

9     has knowingly and voluntarily consented to enter a plea before a

10    U.S. Magistrate Judge.  And obviously, as Mr. Bakke already

11    pointed out, we are proceeding by videoconference at the moment.

12    I do find and recommend that this hearing cannot be conducted in

13    person without seriously jeopardizing public health and safety,

14    and that specific reasons exist and require the change of plea to

15    be conducted by a video conference.

16          And there are two reasons in particular.  One, I am

17    quarantining at home with COVIC in my house, so I'm not at Court

18    right now.  And two, Mr. Kao was first charged by way of criminal

19    complaint back in September 29th, 2020.  And under these

20    circumstances, further delaying his change of plea hearing until

21    it could safely be done in person would seriously harm the

22    interest of justice.

23          Nevertheless, Mr. Kao, we can't proceed without your

24    consent.  So let me ask you, do you consent to proceeding with

25    your hearing this afternoon by video?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  All right.  I do find that the required

3     Cares Act findings have been made and that the Defendant consents

4     to proceeding by video conference.

5              Mr. Kao, have you received a copy of the indictment

6     pending against you?  It's the written charges in this case.  You

7     probably have it there somewhere.

8              THE DEFENDANT:  Yes. Yes, Your Honor, I have.

9              THE COURT:  Okay.  Have you fully discussed those

10    charges and all of the facts surrounding them with your lawyer?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Do you understand everything your attorney

13    has told you about your case and the consequences of pleading

14    guilty?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Are you fully satisfied with the legal

17    representation you have received from your attorneys in this

18    case?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Okay.  And my understanding, counsel, there

21    is no written please agreement.  Is that correct, Mr. Bakke?

22             MR. BAKKE:  That's correct, Your Honor.

23             THE COURT:  All right.  Mr. Kao, let me ask you, has

24    anyone made any promise or assurance of any kind in an effort to

25    get you to plead guilty?

1              THE DEFENDANT:  No, Your Honor.

2              THE COURT:  Has anyone attempted to force you to plead

3       guilty or pressure you or threaten you in any way?

4              THE DEFENDANT:  No, Your Honor.

5              THE COURT:  Okay.  Mr. Nolan, can you confirm the

6       maximum penalties that might apply to a guilty plea in this case?

7              MR. NOLAN:  Yes, Your Honor.  As to each of counts 1

8       through 3, which charge wire fraud, a term of imprisonment of up

9       to 30 years and a fine of up to $1 million, plus a term of

10      supervised release up to five years.

11             As to each of counts 4 through 8, which charge money

12      laundering, a term of imprisonment of up to ten years and a fine

13      of up to $250,000, or twice the amount of the criminally derived

14      property involved in the transaction, whichever is greater, plus

15      a term of supervised release up to three years.

16             In addition, the Court must impose a $100 special

17      assessment as to each count to which the Defendant is pleading

18      guilty.  Additionally, there's forfeiture pursuant to 18 USC,

19      Section 981(a)(2)(C) and 28 USC Section 2461.

20             There is forfeiture of any property, real or personal,

21      which constitutes or is derived from proceeds traceable to a

22      violation of a specified unlawful activity within the meaning of

23      18 USC 1956(c)(7), or conspiracy to commit such offense.  And

24      there is forfeiture pursuant to 18 USC Section 982(a)(1), which

25      provides for forfeiture of any property, real or personal,

1    involved in the offense of violation of 18 USC 1956, 1957, or

2    1960, and property traceable to such property.  The amount

3    subject to forfeiture in this case is not less than $12,841,490

4    and may be greater.

5            Additionally, there's restitution.  The Court must

6    award restitution pursuant to Title 18, United States Code,

7    Section 3663(A), to the persons and entities victimized by the

8    defense offenses.

9            The restitution amount the Defendant must pay in this

10   case is not less than $13,181,787.62, and maybe greater, which

11   consists of loan principal, accrued interest, and processing fees

12   as of December 17, 2021, for the Paycheck Protection Program

13   loans fraudulently obtained by the Defendant in connection with

14   that charged scheme, and upon which the Defendant and his

15   companies defaulted, resulting in the purchase of the defaulted

16   loans by the Small Business Administration, which had guaranteed

17   the loans.

18           Your Honor, those are the potential penalties in this

19   matter.

20           THE COURT:  Thank you.  Mr. Bakke, do you agree with

21   the potential penalties as set forth by Mr. Nolan?

22           MR. BAKKE:  Yes, Your Honor, with the following

23   exceptions.  And I'm not sure on this and maybe Mr. Nolan can

24   help me out.  Regarding the money laundering counts 4 to 8,

25   there's two ways that that could be calculated.  The fine of up

1  to $250,000 or twice -- or twice the amount of the criminally

2  derived property involved in the transaction.  I didn't recall

3  seeing that whichever is greater language in there.

4        So the way I read the statute was that it was an

5  option, but it wasn't whichever is greater, which would tend to

6  make it sound more like it's mandatory that the Court would have

7  to go with whichever is greater.

8        MR. NOLAN:  So, your Honor, I think I can answer that

9  simply.  A fine is always within the discretion of the Court.

10  The whichever is greater language is statutory, and as I

11  understand it, of course, sets the maximum.

12        So if we're talking about an amount -- a money

13  laundering transaction that would increase the fine above

14  $250,000, that would be the statutory maximum, and the District

15  Judge who sentences Mr. Kao would be able to go up to that

16  maximum, but, of course, could impose as little as zero dollars

17  in terms of a fine.  There's no mandatory fine.

18        THE COURT:  I think you two are in agreement.  Mr.

19  Bakke was suggesting it's an option by the sentencing judge.  Is

20  that what you're saying, Mr. Bakke?

21        MR. BAKKE:  Yes, Your Honor.

22        THE COURT:  And you're in agreement with that, Mr.

23  Nolan?

24        MR. NOLAN:  I am, Your Honor.

25        THE COURT:  All right.  Thank you very much.  Mr. Kao,

1   do you under --

2           MR. BAKKE:  I'm sorry, Your Honor.  The other matter is

3   regarding the forfeiture and the restitution.  I agree with the

4   law cited, but we're not agreeing, at this time, to the actual

5   amount.  I believe that this is an estimated amount as a minimum,

6   and it could be higher.  But I just want to make that clear that

7   at this point -- because there is no please agreement, we do not

8   have an agreement as to the amount.

9           THE COURT:  Okay.  Understood.  As I understand the

10  situation and r. Nolan's remarks, the numbers he cited are the

11  Government's position, is that correct, Mr. Nolan?

12          MR. NOLAN:  That's right.  I just want to -- since

13  there's no plea agreement, I want to give fair notice to

14  Defendant it today as to where the Government is in terms of its

15  thinking on both forfeiture and restitution.

16          And of course, these numbers are not new for the

17  defense.  They've had those numbers since January of this year.

18          MR. BAKKE:  And that's correct, Your Honor.  We

19  appreciate that.

20          THE COURT:  Okay.  Did you have anything else, Mr.

21  Bakke?

22          MR. BAKKE:  No, Your Honor.

23          THE COURT:  All right.  Mr. Kao, do you understand that

24  these are the possible penalties which would apply if you enter a

25  guilty plea?

1          THE DEFENDANT:  I'm sorry, you kind of broke up there.

2          THE COURT:  Okay.  I'm sorry.  Do you understand that

3     these penalties Mr. Nolan just discussed and Mr. Bake as well,

4     that these are the possible penalties which will apply if you

5     enter a guilty plea?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  All right.  And if you are convicted of

8     more than one offense, the Court has authority to order

9     consecutive sentences.  If the Court did so, it would mean that

10    you have to serve those sentences one at a time.  Do you

11    understand that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  All right.  And Mr. Nolan referenced

14    supervised release.  Your potential penalties include a term of

15    supervised release.  During supervised release, you have to

16    comply with a set of conditions, including requirements that you

17    obey the law, that you report as required to a probation officer,

18    and other conditions.

19         If the Court finds that you violated any of those

20    conditions, you could be required to serve additional prison

21    time.  Do you understand that?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  And just to highlight the restitution and

24    forfeiture, again, the sentencing judge can require you to make

25    restitution to any victim of the offense.  The Government

1   maintains that the amount of restitution is at least

2   $13,181,787.62 and maybe greater.  Do you understand that?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  The District Judge might also require you

5   to forfeit property to the United States.  And the Government

6   maintains that the amount subject to forfeiture is not less than

7   $12,841,490 and may be greater.  Do you understand that?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  If you plead guilty to the charges in this

10  case, you may also lose valuable civil rights, including the

11  right to vote, the right to hold public office, the right to

12  serve on a jury, and the right to possess a firearm.  Do you

13  understand that?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Okay.  Regarding sentencing, sir, the U.S.

16  Sentencing Commission has issued guidelines for the sentencing

17  judge to consider in determining the sentence in a criminal case.

18  The sentencing judge must consider the guidelines when imposing

19  sentence, but the guidelines are advisory only.  The Court will

20  consider other factors required by law.

21           Have you and your attorney talked about how these

22  sentencing guidelines and other sentencing factors might apply to

23  your case?

24           THE DEFENDANT:  Yes.  Yes, we have.

25           THE COURT:  All right.  Do you understand that the

1   Court will not be able to determine the guidelines for your case

2   until after a presentence report has been prepared?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  Do you also understand that the Court will

5   consider the guidelines and the other factors required by law and

6   that the Court may impose a sentence more severe than the

7   sentence called for by the guidelines?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  Do you understand that if the sentence is

10   worse than you expect, you will still be bound by your plea and

11   have no right to withdraw it?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  Do you also understand that the sentence

14   imposed may be different from any estimate your lawyer has given

15   you?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  And do you understand that any

18   recommendation of a sentence agreed to by your lawyer and the

19   Government is not binding on the Court and you might, on the

20   basis of your guilty plea, receive up to the maximum sentence

21   permitted?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Okay.  Has anyone made any promise to you

24   what your sentence will be?

25           THE DEFENDANT:  No, Your Honor.

1          THE COURT:  All right.  And, Mr. Kao, you have the

2     right to plead not guilty and to persist in that not guilty plea.

3     You would then have the right to trial by jury.

4          During that trial, you would have the right to

5     assistance of counsel for your defense the right to see and hear

6     all the witnesses and to have your lawyer cross-examine them, the

7     right to testify or to decline to testify and remain silent, and

8     the right to have the Court issue subpoenas for any witnesses you

9     wish to call.

10         At trial, you would be presumed innocent, and the

11    United States would have the burden of proving that you are

12    guilty beyond a reasonable doubt.

13         If you are found guilty after a trial you would have

14    the right to appeal that conviction to a higher court.  And if

15    you could not afford the cost of an appeal the Government would

16    pay those costs for you.

17         Do you understand all of these rights?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Okay.  If you plead guilty, however, and

20    the Court accepts your guilty plea there will be no trial.

21    You'll be giving up all of these rights to a trial and appeal

22    rights that I have described.  Do you understand that?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  And also, so long as you plead not guilty

25    you have the right to remain silent.  But if you plead guilty,

1   you are waiving that right, and I will ask you some questions

2   about what occurred, and you must answer those questions

3   truthfully under oath even if your answers establish that you

4   committed crimes.  Do you understand that?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Okay.  Mr. Nolan, would you please

7   summarize for the Court and the Defendant the essential elements

8   which the United States would be required to prove at trial on

9   these charges?

10         MR. NOLAN:  Yes, Your Honor.  With respect to counts 1

11  through 3 wire fraud, 18 U.S.C. 1343, the elements are as

12  follows. First, the Defendant knowingly devised, intended to

13  devise, or participated in a scheme to defraud, or to obtain

14  money or property by means of false or fraudulent pretenses,

15  representations, or promises.

16         Second, the statements made as part of the scheme were

17  material.  That is, they had a natural tendency to influence or

18  were capable of influencing a person to part with money or

19  property.

20         Third, the Defendant acted with the intent to defraud

21  that is, the intent to deceive or cheat.

22         Fourth, the Defendant used or caused to be used an

23  interstate or foreign wire communication to carry out or attempt

24  to carry out an essential part of the scheme.

25         And, fifth, the violation affected the financial

1    institution or involved a presidentially declared major disaster

2    or emergency.

3              With regard to counts 4 through 8, money laundering, 18

4    U.S.C., Section 1957, the elements are as follows.

5              First, the Defendant knowingly engaged or attempted to

6    engage in a monetary transaction.

7              Second, the Defendant knew the transaction involved

8    criminally derived property.

9              Third, the property had a value greater than $10,000.

10             And, fourth, the property was, in fact, derived from

11   wire fraud.  Thank you.

12             THE COURT:  All right.  Thank you.  Mr. Bakke, do you

13   disagree in any respect with Mr. Nolan's recitation of the

14   essential elements?

15             MR. BAKKE:  No, Your Honor, we agree.

16             THE COURT:  Okay.  Mr. Kao, do you understand that if

17   there were a trial on these charges, the United States would be

18   required to present evidence sufficient to prove each of these

19   essential elements beyond a reasonable doubt?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  All right.  Mr. Nolan, would you please

22   summarize the factual basis for the plea?  And Mr. Kao, I'm going

23   to ask you to listen to Mr. Nolan very carefully.  After he

24   finishes, I'm going to ask you if everything he said is accurate.

25   Go ahead, Mr. Nolan.

1           MR. NOLAN:  Yes, Your Honor.  And I'm just going to

2     reference, for everyone's ease, that I'll be reading from the

3     factual basis in my letter of September 6, 2022 to the Court and

4     copied to the Defense.

5           If this matter were to proceed to trial, the Government

6     would prove the following facts through the introduction of

7     witness testimony, forensic digital evidence, company, bank, and

8     other records, statements by the Defendant and his co-

9     conspirator, and other evidence.

10           During the period from approximately March 2020 through

11     July 2020, Defendant Martin Kao owned 99 percent of Navatek, LLC

12     and served as its Chief Executive Officer.  Headquartered in

13     Honolulu, Hawaii, Navatek, LLC, was a research, engineering,

14     design, and innovations company that specialized in novel systems

15     for the Department of Defense, hereinafter DOD, and other

16     partners in academia and other scientific fields.  Nearly all of

17     Navatek, LLC's, revenue was from the DOD.

18           On approximately July 27, 2020, Navatek, LLC, changed

19     its name to Martin Defense Group, LLC.  Navatek, LLC was the sole

20     member and manager of Navatek CFD Technologies, LLC, Navatek

21     Lifting Body Technologies, LLC, Navatek Alternative Energy

22     Technologies, LLC, and Navatek SHC, LLC, collectively,

23     hereinafter the Navatek subsidiaries.

24           On March 13, 2020, the President of the United States

25     declared a nationwide emergency pursuant to Section 501(b) of the

 1   Stafford Act, 42 U.S.C., Section 5121, et seq, due to the COVID-

 2   19 pandemic.  In March 2020, Congress enacted the Coronavirus

 3   Aid, Relief, and Economic Security here and after CARES Act,

 4   which provided for the establishment of the Paycheck Protection

 5   Program here and after PPP.

 6           MR. BAKKE:  I'm sorry, Your Honor.  We lost the volume.

 7           THE COURT:  Okay.  I can still hear Mr. Nolan.  Can you

 8   hear me?

 9           MR. BAKKE:  We can't hear any of you.

10           THE COURT:  Okay.  That might -- I can hear Mr. Nolan.

11   Fine.  I can hear Mr. Bakke.

12           MR. NOLAN:  And I can hear both Mr. Bakke and Your

13   Honor.

14           THE COURT:  Let me ask the courtroom manager, do we

15   waive a cellphone for Mr. Bakke?  Maybe I can call him.

16           THE CLERK:  Your Honor, I think it's --

17           MR. NOLAN:  You could text it on --

18           THE CLERK:  Let me see.

19           MR. BAKKE:  Your Honor, I don't know if you can hear

20   us. Can you hear us?  You can hear us.

21           THE COURT:  We can see and hear everybody.  We think it

22   is on your end.

23           MR. BAKKE:  Oh, there we go.  Okay.  You completely

24   went black.  I can hear you now.

25           MR. NOLAN:  Mr. Bakke, can you hear me?

1          MR. BAKKE:  Yes, we can, Your Honor.

2          THE COURT:  Okay.  That was Mr. Nolan.  This is Ken

3    Mansfield; can you hear me?

4          THE DEFENDANT:  Yes.

5          MR. BAKKE:  Yes, we can hear you.

6          THE COURT:  Okay.

7          MR. BAKKE:  Mr. Nolan, can you say something?

8          MR. NOLAN:  Yes.  Can you hear me?

9          MR. BAKKE:  Yeah.  Okay.  We're back online, Your

10   Honor.

11         THE COURT:  Okay.  Maybe you need to move that mouse

12   every few minutes.  I'm just guessing what it might have been,

13   but we think it was on your end, so we'll start again.  Mr.

14   Bakke, can you let us know what you last heard, and we can ask

15   Mr. Nolan to back it up if we need to?

16         MR. BAKKE:  Yes, Your Honor.  I believe he was in about

17   the middle of paragraph two on page 3.  In March 2020, Congress

18   enacted the Coronavirus relief.

19         THE COURT: All right.  Thank you.  And, Mr. Bakke, let

20   me just confirm, can you see us as well?

21         MR. BAKKE:  Yes, Your Honor.

22         THE COURT:  Okay.  All right.  Please proceed, Mr.

23   Nolan.

24         MR. NOLAN:  Thank you.  To obtain a PPP loan, a

25   qualifying business was required to submit a PPP loan application

1   signed by an authorized representative.  The PPP loan application

2   required, among other things, the representative to acknowledge

3   the program rules, make specified affirmative certifications,

4   state the applicant's average monthly payroll expenses and number

5   of employees, which were used to calculate the amount of money

6   the applicant was eligible to receive under the PPP and provide

7   documentation supporting the payroll expenses.

8        Counts 1 through 3, wire Fraud.  During approximately

9   March 2020 through July 2020, the Defendant knowingly devised and

10  intended to devise a scheme and artifice to obtain money for

11  which the Defendants, Navatek LLC, and the Navatek subsidiaries

12  were not eligible to receive under the PPP by submitting and

13  causing to be submitted false and fraudulent PPP loan

14  applications and representations to Bank One, Bank Two, and Bank

15  Three.

16       As a result, the Defendant fraudulently obtained more

17  than $12.8 million in PPP funds for his companies and transferred

18  approximately $2 million of those PPP funds to himself for his

19  personal benefits.

20       The Defendant's PPP loan application to Bank One.  On

21  April 3, 2020, the Defendant caused to be submitted to Bank One,

22  which was a Hawaii based community bank, a PPP loan application

23  in the name and tax identification number of Navatek LLC, signed

24  by the Defendant, seeking the maximum amount of $10 million in

25  PPP funds.  The application contained materially false and

1  fraudulent representations as the average monthly payroll, number

2  of employees, and ownership of or common management with any

3  other business hereinafter Bank One PPP loan application.

4     In the Bank One PPP loan application, the Defendant

5  falsely and fraudulently stated that Navatek, LLC, had an average

6  monthly payroll of $4,072,000 when the Defendant knew that

7  Navatek LLC and the Navatek subsidiaries had a combined average

8  monthly payroll of approximately $829,385 during calendar year

9  2019 and through the application dates.

10     In the Bank One PPP loan application, the Defendant

11  falsely and fraudulently stated that Navatek, LLC, had 490

12  employees when the Defendant knew that Navatek, LLC and the

13  Navatek subsidiaries collectively employed approximately 140

14  employees during calendar year 2019 and through the application

15  date.

16     In the Bank One PPP loan application, the Defendant

17  falsely and fraudulently responded no to question three that

18  asked, is the applicant or any owner of the applicant an owner of

19  any other business or have common management with any other

20  business?  The Defendant's response was false and fraudulent

21  because, as the Defendant knew, the Defendant owned and managed

22  the Navatek subsidiaries through his ownership and control of

23  Navatek, LLC.  By responding falsely and fraudulently, the

24  Defendant avoided listing all such businesses and describing the

25  relationship of the businesses as required for an affirmative

1    response to question three.

2           In the Bank One PPP loan application, the Defendant

3    falsely and fraudulently certified that from February 15, 2020 to

4    December 31, 2020, Navatek, LLC has not and will not receive

5    another loan under the PPP.

6           In the Bank One PPP loan application, the Defendant

7    falsely and fraudulently certified that the information provided

8    in this application and the information provided in all

9    supporting documents and forms is true and accurate in all

10   material respects.

11          In support of the Bank One PPP loan application, the

12   Defendant caused to be submitted a false and fraudulent

13   spreadsheet used to calculate applicant Navatek, LLC's average

14   monthly payroll and number of employees that, as the Defendant

15   knew, included costs for employees that did not exist and were

16   not eligible for inclusion.

17          During approximately April 2020 to July 2020, the

18   Defendant made additional false and fraudulent representations to

19   Bank One in support of the Bank One PPP loan application,

20   intending these representations to pressure Bank One into quickly

21   and without scrutiny approving the Bank One PPP loan application

22   and to conceal the scheme.

23          By April 18, 2020, Bank One issued and funded the

24   requested PPP loan by depositing $10 million into Navatek, LLC's

25   business checking account, ending in 9145 at Bank One.  In 2021,

1   Navatek, LLC defaulted on the $10 million PPP loan from Bank One.

2          The Defendant's PPP loan application to Bank Two.  On

3   approximately April 20, 2020, the Defendant caused to be

4   submitted to Bank Two, which was a Mainland based national bank,

5   a PPP loan application in the name and tax identification number

6   of Navatek CFD Technologies, LLC, signed by the Defendant seeking

7   $2,841,490 in PPP funds.  The application contained materially

8   false and fraudulent representations as the average monthly

9   payroll, number of employees, and ownership of or common

10  management with any other business herein after the Bank Two PPP

11  loan application.

12         In an email accompanying the Bank Two PPP loan

13  application, the Defendant falsely and fraudulently stated to a

14  President of Bank Two, we did submit an application with a local

15  Hawaii bank for a completely separate company, and that is the

16  one that got fumbled.  The Defendant's representation in the

17  email was false and fraudulent because, as the Defendant knew,

18  the PPP application to which he referred in the email had been

19  approved and funded by Bank One and the applicant for the Bank

20  One PPP loan was not a completely separate company.  In fact, the

21  applicant for the first PPP loan was Navatek, LLC, the entity

22  that owned Navatek CFD Technologies, LLC.

23         In the Bank Two PPP loan application, the Defendant

24  falsely and fraudulently stated that Navatek CFD Technologies,

25  LLC, had an average monthly payroll of $1,136,596 when the

1   Defendant knew that Navatek CFD Technologies, LLC, had an average

2   monthly payroll of approximately $276,450 during calendar year

3   2019 and through the application dates.

4          In the Bank Two PPP loan application, the Defendant

5   falsely and fraudulently stated that Navatek CFD Technologies,

6   LLC, had 140 employees, when the Defendant knew that Navatek CFD

7   Technologies, LLC, employed approximately 40 employees during

8   calendar year 2019 and through the application date.

9          In the Bank Two PPP loan application, the Defendant

10  falsely and fraudulently responded, no, to question three that

11  asked, is the applicant or any owner of the applicant and owner

12  of any other business, or have common management with any other

13  business?  The Defendant's response was false and fraudulent

14  because, as the Defendant knew, the Defendant owned and managed

15  the Navatek subsidiaries, including Navatek CFD Technologies,

16  LLC, through his ownership and control of Navatek LLC.

17         By responding falsely, the Defendant avoided listing

18  all such businesses and describing the relationship with the

19  businesses as required for an affirmative response to question

20  three, and thereby avoided the possibility that Bank Two and the

21  SBA would determine that Navatek CFD Technologies, LLC, was not

22  eligible for a PPP loan due to the Bank One PPP loan to Navatek

23  LLC.

24         In the Bank Two PPP loan application, the Defendant

25  falsely and fraudulently certified that from February 15, 2020 to

December 31, 2020, Navatek CFD Technologies, LLC, has not and will not receive another loan under the PPP, when the Defendant knew that Navatek CFD Technologies, LLC, had, approximately two days earlier, received the Bank One PPP loan in the amount of $10 million in the name of Navatek LLC.

In the Bank Two PPP loan application, the Defendant falsely and fraudulently certified that the information provided in this application and the information provided, all supporting documents and forms, is true and accurate in all material respects.

During approximately April 2020 through July 2020, the Defendant made additional false and fraudulent representations to Bank Two and others in support of the Bank Two PPP loan application and to conceal the scheme.

By May 6, 2020, Bank Two had issued and funded the requested PPP loan by depositing approximately $2,841,490 into Navatek LLC's account ending in 9145 at Bank One.

On approximately May 4, 2020, after Bank Two's approval of the PPP loan application and funding of the Bank Two PPP loan, the Defendant altered the previously submitted fully executed promissory note for the Bank Two PPP loan by deleting all references to the PPP.  The Defendant then provided the altered note to others to conceal his scheme to defraud.

In 2021, Navatek LLC and Navatek CFD Technologies, LLC defaulted on the PPP loan from Bank Two.

1          The Defendant's PPP loan application to Bank Three.  On

2    April 21, 2020, the Defendant caused to be submitted to Bank

3    Three, which was a Hawaii based regional bank, a PPP loan

4    application in the name and tax identification number of Navatek

5    SHC, LLC, signed by the Defendant seeking $2,852,839 in PPP funds

6    and containing materially false and fraudulent representations as

7    the average monthly payroll number of employees and ownership of

8    or common management with any other business, hereinafter the

9    Bank Three PPP loan application.

10         In an email accompanying the Bank Three PPP loan

11   application, the Defendant falsely and fraudulently stated to a

12   vice president of Bank Three, as we discussed, we dropped the

13   ball with timing and process the first time.  Our entire company

14   structure is complicated, to say the least.  With operations,

15   offices, employees and entities all over the country, we really

16   got confused on how to apply.

17         Long story short, we discussed with SBA and figured it

18   out too late.  Well, here's hopefully our second chance.  The SHC

19   entity is our salaries Hawaii company entity.  We are applying

20   under that entity alone and told that is the way to correctly do

21   it.  So the application is correct, and all calculations have

22   been reviewed to eliminate all salary amounts in excess of

23   $100,000.

24         The Defendant's representations in the email were false

25   and fraudulent because, as the Defendant knew, the PPP loan

1   application to which he referred in the email has been approved

2   and funded by Bank One.

3           In the Bank Three PPP loan application, the Defendant

4   falsely and fraudulently stated that Navatek SHC, LLC, had an

5   average monthly payroll of $1,141,136, when the Defendant knew

6   that the Navatek SHC, LLC, had no payroll during calendar year

7   2019 and through the application date.

8           In the Bank Three PPP loan application, the Defendant

9   falsely and fraudulently stated that Navatek SHC, LLC, had 140

10  employees, when the Defendant knew the Navatek SHC, LLC, had no

11  employees during calendar year 2019 and through the application

12  date.

13          In the Bank Three PPP loan application, the Defendant

14  falsely and fraudulently responded, no, to question three that

15  asked is the applicant or any owner of the applicant an owner of

16  any other business, or have common management with any other

17  business?  The Defendant's response was false and fraudulent

18  because, as the Defendant knew, the Defendant owned and managed

19  the Navatek subsidiaries, including Navatek SHC, LLC, through his

20  ownership and control of Navatek LLC.

21          By responding falsely, the Defendant initially avoided

22  listing all such assets -- excuse me, listing all such businesses

23  and describing the relationship of the businesses as required for

24  an affirmative response to question three, and thereby initially

25  avoided the possibility that Bank Three and the SBA would

1    determine that Navatek SHC, LLC was not eligible for a PPP loan

2    due to the Bank One PPP loan to Navatek LLC.

3          In the Bank Three PPP loan application, the Defendant

4    falsely and fraudulently certified that from February 15, 2020 to

5    December 31, 2020, Navatek SHC, LLC, has not and will not receive

6    another loan under the PPP, when the Defendant knew that Navatek

7    SHC, LLC, had, approximately three days earlier, received the

8    Bank One PPP loan in the name of Navatek, LLC.

9          In the Bank Three PPP loan application, the Defendant

10   falsely and fraudulently certified that the information provided

11   in this application and the information provided all supporting

12   documents and forms, is true and accurate in all material

13   respects.

14         From approximately April 2020 to July 2020, the

15   Defendant made additional false and fraudulent statements to Bank

16   Three, in support of the Bank Three PPP loan application, false

17   and fraudulent representations and certifications and revised

18   submissions of the Bank Three PPP loan application, and false and

19   fraudulent statements to Bank Three and others to conceal the

20   scheme.  After a vice president at Bank Three informed the

21   Defendant that Navatek SHC, LLC's tax identification number was

22   different from those stated on payroll forms submitted in support

23   of the loan application, the Defendant falsely and fraudulently

24   stated in an email to the vice president, the varying entities

25   have employees, but all payroll is cleared through SHC Salaries

1   Hawaii company LLC.

2          The Defendant's statement was false and fraudulent

3   because, as the Defendant knew, payroll was not cleared through

4   Navatek SHC, LLC.  In response -- excuse me.  In response to the

5   Defendant's  email, the vice president instructed the Defendant

6   to submit applications and the names of the entities that paid

7   the employees.

8          After the Defendant submitted the revised Bank Three

9   PPE loan applications and the names and tax identification

10  numbers of Navatek, LLC and Navatek CFD Technologies, LLC, Bank

11  Three determined through SBA systems that each of those two

12  entities had already been approved for a PPP loan.

13         When so advised by the Bank Three Vice President, the

14  Defendant falsely and fraudulently stated in an email to the vice

15  president on or about April 29, 2020, after much ado last night

16  and this morning, we have made no progress in getting to the

17  bottom of this and with the SBA on getting the actual approval

18  notifications or numbers.  The Defendant then abandoned his

19  efforts to obtain additional PPP loans from Bank Three.

20         In executing the charge scheme, the Defendant caused to

21  be transmitted by means of interstate wire the following.

22         With respect to Count One, on or about April 3, 2020,

23  the submission of a PPP application to Bank One via an internet

24  portal.  With respect to Count Two, on or about April 20, 2020,

25  submission of a PPP application to Bank Two via email. With

1   respect to Count three, on or about April 21, 2020, submission of

2   a PPP application to Bank Three via email.

3         Each of the foregoing three electronic loan application

4   submissions traveled across state lines from Hawaii and through

5   servers on the United States mainland.

6         On the following dates, the Defendant deposited into

7   the specified accounts the specified checks payable as specified

8   and drawn on Navatek LLC's account ending in 9145 at Bank One.

9   As the Defendant knew, each deposit included more than $10,000 of

10  proceeds derived from Bank One's approval of the Defendant's

11  fraudulent PPP application charged in Count One as wire fraud.

12        Each deposit affected interstate commerce by, among

13  other things, utilizing interstate systems for the electronic

14  transfer of funds between and among financial institutions in the

15  United States.

16        With respect to Count Four, on or about April 21,

17  2020, check number 31029, payable to Navatek LLC, which was

18  deposition into Navatek's Merrill Lynch account ending in 3506,

19  in the amount of $2 million.

20        With regard to Count five, on or about April 22, 2020,

21  check number 30986, payable to Mark Kao, the Defendants, and

22  deposited it into the Defendant's personal Merrill Lynch account

23  ending in 2641.  In the amount of $2 million.

24        With regard to Count six, on or about about April 29,

25  2020, check number 31124, payable to Navatek LLC, deposited into

1    Navatek's Merrill Lynch account ending in 3506 in the amount of

2    $3 million.

3              With regard to Count seven.  On or about May 7, 2020,

4    check number 31127 payable to Navatek LLC and deposited in the

5    Navatek's Merrill Lynch account ending in 3506, in the amount of

6    $3 million.

7              And with regard to Count eight, on or about May 18,

8    2020, check number 31249, payable to Mark Kao, the Defendants,

9    and deposited into Defendant's personal FHB account ending in

10   1787, in the amount of $20,200.

11             Your Honor, that is the factual basis which the

12   Government would anticipate proving at trial beyond a reasonable

13   doubt.

14        THE COURT: Alright.  Thank you very much, Mr. Nolan.  Mr.

15   Kao, Mr. Nolan said a lot there.  What I need to understand from

16   you is whether you agree with all of the facts he just set forth.

17        MR. BAKKE:  Can we have just a moment, Your Honor?

18   I'll just put us on mute.

19        THE COURT:  Yes, you may.

20      (Counsel and Defendant confer)

21        MR. BAKKE:  Thank you, Your Honor.  As I explained to

22   Mr. Kao before, you know, we don't have a change of plea, so we

23   weren't stipulating to a factual basis.  We did have a chance,

24   though, to review Mr. Nolan's factual basis, which he just

25   literally read from the document that we had, there are a few

1    things in there, such as like what happened after, I believe,

2    2021.

3              THE DEFENDANT:  After my arrest on September 30th,

4    2020.

5              MR. BAKKE:  After his arrest.  So some of these minor

6    things like the company default and stuff like that, he was no

7    longer in the company.  So a lot of that stuff he has no personal

8    knowledge of.

9              THE COURT:  Okay.

10             MR. BAKKE:  But in general, Your Honor, as far as the

11   overall, for lack of a better term, scheme and the money

12   laundering, we don't have any real objections, but I believe Mr.

13   Kao will put on the record why he believes he's pleading.

14             THE COURT:  Okay.  And I will ask him to do that in a

15   minute.  So I need to hear it from you, Mr. Kao.  Do you agree

16   with the factual basis set forth by Mr. Nolan?

17             THE DEFENDANT:  In general, I agree.

18             THE COURT:  Okay.  Let's be specific.  What is it you

19   either don't agree with or you just lack knowledge of?  I want to

20   be -- there's a lot here, and so I want to be particular about

21   it.  We all have -- maybe I should start with by asking the

22   lawyers, would it facilitate matters to file the September 6,

23   2022 letter, and then we can talk about the paragraphs in the

24   letter and make sure we have at least a common understanding.

25             MR. NOLAN:  The Government has no objection to that.

 1  I'm just carefully --

 2          THE COURT:  Yeah.

 3          MR. NOLAN:  -- I think individuals have been anonymized

 4  other than, of course, the Defendant.  So there's no objection to

 5  that.  And, Your Honor, the Defendant had this same factual basis

 6  since January, not just since yesterday when you got it.  So I

 7  would hope there would not be today, for the first time, a

 8  lengthy discussion indicating disagreement with the factual

 9  basis, given that it's more than eight months in their hands.

10          THE COURT:  Okay.  Understood.  Mr. Bakke, any

11  objection to us publicly filing this letter?

12          MR. BAKKE:  No, Your Honor.  And I believe it was just

13  the Court in the Court's questioning of the Defendant.

14          THE COURT:  Okay.  I think so, too.  So, as part of

15  today's proceeding, we will file the September 6, 2022 letter

16  publicly.  The letter from Mr. Nolan to me with a copy to you,

17  Mr. Bakke.

18          Okay.  Mr. Kao, again, I need to understand now that we

19  know what we're talking about, if there's any paragraph or any

20  sentence within a paragraph in particular that you don't agree

21  with for any reason, whether it's because you think it is wrong

22  or because you don't have knowledge of what Mr. Nolan has

23  asserted, I want to walk through all of that right now.

24          THE DEFENDANT:  Okay. Should I speak freely?

25          MR. BAKKE:  Yeah.  So refer to the document.  They're

1  all numbered paragraphs, so refer to the paragraph and the page

2  number.

3          Your Honor, can I put you on mute again?  Sorry.

4          THE COURT:  You sure can.  And really, what I'm

5  envisioning, you know, Mr. Nolan, read through the entire thing.

6  There are 37 paragraphs here -- 36 numbered paragraphs, and if

7  Mr. Kao doesn't unequivocally agree with everything that's here,

8  I think we all need to know that.

9          MR. BAKKE:  Yes.

10          THE COURT:  Mr. Bakke, if you need to mute the video

11  for a few minutes, you certainly can.  I want you two have total

12  privacy.  We're not in a rush.  That's fine.  We'll wait.

13          Counsel, I'm going to mute my video and audio until

14  they're done.  Feel free to do the same if you'd like.  We're

15  just standing by.

16      (Counsel and Defendant confer)

17          MR. BAKKE:  Aloha, everyone.  We're ready again, Your

18  Honor.

19          THE COURT:  All right.  Thank you.  Please just hang on

20  a second.  We'll wait till get everybody back.  All right.  And

21  Mr. Bakke, you can see and hear me?

22          MR. BAKKE:  Yes, Your Honor.

23          THE COURT: All right.  Mr. Nolan, you can see and hear

24  everybody?

25          MR. NOLAN:  I can, Your Honor.  Thank you.

 1              THE COURT:  Okay.  All right.  Great.

 2              All right.  I'll turn it back over to you, Mr. Bakke

 3   and Mr. Kao.  Again, my question is whether there are any facts

 4   that the Government asserts it will prove at trial as set forth

 5   in paragraphs 1 through 36 that you either disagree with or, due

 6   to your lack of knowledge, are not able to agree with.  That's

 7   for you, Mr. Kao.

 8              THE DEFENDANT:  Okay.  Thank your honor.  Victor -- Mr.

 9   Bakke explained to me and kind of clarified the question that

10   you're asking.  And I understand, and I agree with the facts,

11   except for what -- anything that references post my arrest.  I

12   was not involved in any of the company decisions or transactions,

13   so I do not know.

14              THE COURT:  Okay.  And if you can just help me.  Are

15   there any particular facts that this issue of, you know, you were

16   out of the company after your arrest that you're referring to

17   here?

18              THE DEFENDANT:  On page 5, paragraph 13, is one

19   example.

20              THE COURT:  Okay.  And let me just question you on

21   that.  You don't -- what I'm hearing you say, don't let me put

22   words in your mouth, you can correct me, is you don't have

23   personal knowledge of the default because you were no longer a

24   part of the company?

25              THE DEFENDANT:  That's correct, Your Honor.

```
 1              THE COURT:  Okay.  All right, that's paragraph 13.  Any
 2   other paragraphs?
 3              MR. BAKKE:  The same, Your Honor, on page 7, paragraph
 4   24.
 5              THE COURT:  Okay.  I figured that.  Any others?
 6              THE DEFENDANT:  That's it, Your Honor.
 7              THE COURT:  Okay.  Let me just ask you one follow-up
 8   question there, Mr. Kao.  For paragraph 13 and 24 regarding the
 9   defaults, do you have any basis from knowledge that you do have
10   to dispute Mr. Nolan's assertion?  I'm not asking you whether you
11   agree with it, but whether you have enough knowledge to disagree
12   with it.
13              THE DEFENDANT:  Yes.
14              THE COURT:  Okay.  I mean, the Government is asserting
15   that Navatek defaulted on the $10 million loan from Bank One.  Do
16   you have any basis to dispute that assertion?
17              THE DEFENDANT:  I'm not sure I understand.
18              MR. BAKKE:  Yeah, Your Honor, I was involved
19   tangentially with the civil cases and stuff.  He had different
20   counsel for that.  But how that went down, whether it was a
21   default to the bank or to the Small Business Administration
22              THE COURT:  Okay.
23              MR. BAKKE:  -- is there.  But, I mean, we agree with it
24   in the general sense that the loan was due, and whatever happened
25   to it, we don't know.
```

 1          THE COURT:  It was due, and it was not prepaid.  Is

 2    that a better way?  If you don't like the word default, I can

 3    understand that.  That may not be the right word for you.

 4          Okay.  Let me pause you there.  Mr. Nolan, given this

 5    issue, where the Defendant, I guess, wasn't a part of the company

 6    and maybe the default is more complicated than I'm certainly

 7    aware of, do you have any problem proceeding if he, the

 8    Defendant, does not affirm paragraphs 13 and 24?

 9          MR. NOLAN:  Your Honor, neither of those two go to the

10    elements.  They, of course, perhaps go to restitution, some other

11    factors at sentencing, but there's not a need today for Mr. Kao

12    to admit the defaults.  And so no need for him to admit to

13    paragraphs 13 and 24.

14          THE COURT:  All right.  Thank you, Mr. Nolan.  All

15    right.  Thank you, Mr. Kao.  I'm done with that issue.  Are there

16    any other paragraphs that you disagree with or don't have

17    knowledge of?

18          THE DEFENDANT:  No, Your Honor.

19          THE COURT:  Okay.  Thank you.

20          All right.  Mr. Kao, let me ask you in your own words,

21    if you can tell me what you did that constitutes the crimes

22    charged in Counts 1 through 8?

23          THE DEFENDANT:  Should I go through one by one, or

24    just --

25          THE COURT:  Yeah, it might be simplest to go through

1    one by one.

2         THE DEFENDANT:  I apologize.  I'm speaking slowly.  I

3    want -- I want to be able to get across.

4         THE COURT:  Thank you.  Take all the time you need.  I

5    trust this is a difficult afternoon for you.  And like I said

6    earlier, we are in no rush.  This is all I have for the rest of

7    the day, so you take your time.  If you need a break, you tell

8    us.  If you need to talk to your lawyer, you tell us.  We'll

9    accommodate all of that.

10        MR. BAKKE:  Start with Bank One, Count 1.

11        THE DEFENDANT:  Okay.  Many of these -- in fact, all

12   three counts have a similar theme, maybe the same theme.  I

13   believe that maybe the means justify the end.

14        MR. BAKKE:  Can I have just a moment?

15        THE COURT:  Yes, please take all the time you need.

16      (Counsel and Defendant confer)

17        MR. BAKKE:  Okay.  Thank you, Your Honor.

18        THE COURT:  Sure.

19        THE DEFENDANT:  Okay.  I guess I'll restart.

20        So, for Loan One, the application to Bank One for $10

21   million, we applied using payroll numbers that were current as

22   well as estimated for our prospective hires for the period of the

23   PPP loan repayment.  We knew or I knew that the calculation

24   specified to use 2019 average monthly payroll, but we used the

25   average payroll for what we had estimated to be our payroll cost

1    for the period of the PPP loan, as well as our current payroll at

2    the time of the application, which resulted in a higher loan

3    amount than what we would have otherwise qualified for strictly

4    using 2019 payroll.  And, yes, we submitted the application via

5    the internet.

6              THE COURT:  Okay.  So again, for the Bank One loan that

7    was on or about April 3, 2020?

8              THE DEFENDANT:  Correct, Your Honor.

9              THE COURT:  And you misstated the monthly payroll; is

10   that correct?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  And you also misstated the number of

13   employees that you had?

14             THE DEFENDANT:  Yes. Your Honor.

15             THE COURT:  And then you also did not answer truthfully

16   that question number three about whether you had any common

17   ownership with another business; is that true?

18             THE DEFENDANT:  Yes, I signed the application and that

19   was one of the questions.

20             THE COURT:  Okay.  And then ultimately, Bank One issued

21   the loan in the amount of $10 million into Navatek, LLC's

22   business checking account?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Okay.  And you did that by means -- you

25   submitted that application by means of an internet portal?

 1          THE DEFENDANT:  I believe so.

 2          THE COURT:  Okay.  All right.  Mr. Nolan, is there any

 3   other follow-up you would like as to Count 1?

 4          MR. NOLAN:  Your Honor, I think all the facts that were

 5   just covered by you and the Defendant are sufficient for the

 6   elements.  He has already admitted to the somewhat more robust

 7   factual basis I've given, but I don't think he needs to repeat

 8   every fact again.

 9          THE COURT:  Okay.  All right.  Thank you.

10          All right.  Mr. Kao, again, in your own words, if you

11   can tell me what you did with Bank Two, which is Count 2 of the

12   indictment?

13          THE DEFENDANT:  For the second bank we applied for our

14   second loan, knowing like Mr. Nolan outlined, that we already

15   received the first one.

16          THE COURT:  Okay.  And again, you made

17   misrepresentations about payroll, and the number of employees and

18   whether you had any common ownership with businesses making

19   similar applications?

20          THE DEFENDANT:  Yes.  We made misrepresentation

21   regarding the payroll amount for 2019, for that second entity,

22   Navatek CFD Technologies, and the affiliation.  Again, I signed

23   the application.

24          THE COURT:  Okay.  And for that application, the

25   Government asserts that you used email for that submission.  Do

1  you agree with that?

2          THE DEFENDANT:  Yes.  Yes.

3          THE COURT:  All right.  Thank you.  Mr. Nolan, is that

4  enough for Count 2?

5          MR. NOLAN:  I think it is, Your Honor.  The one thing I

6  would add, just with respect to all, maybe you intend to cover it

7  after Count 3, is that these statements that he's admitting to,

8  that he admits that they were material and, therefore, had the --

9  at least the potential to influence the decision makers here, the

10  banks.

11          THE COURT:  Okay.  I will cover that.

12          Mr. Kao, you heard Mr. Nolan's question.  He's asking

13  me to ask you whether the misstatements you made as to Bank One,

14  Bank Two, and Bank Three were material in that you made

15  misstatements, and it appears that the Government relied on them

16  in making these loans.  Do you agree with that?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Okay.  Thank you.  And then lastly, tell me

19  in your own words, please, about Bank Three.  The Bank Three

20  loan.

21          THE DEFENDANT:  We applied for the Bank Three loan at

22  the same time, roughly, I think, maybe a day apart, I can't

23  remember exactly, with the Bank Two loan.  I think there were for

24  nearly identical amounts, expecting to get one of them, and --

25  but that was for the same -- it was the same effects.  We knew we

1    had the first loan already, but we applied for a second and third

2    loan, expecting to get either Bank Two or Bank Three.

3              THE COURT:  And Bank Three, that application was also

4    by computer -- by email, I believe.

5              THE DEFENDANT:  By email, yes.

6              THE COURT:  Okay.  Thank you.  Mr. Nolan, anything

7    further as to Count 3?

8              MR. NOLAN:  Your Honor, I think that's fine, as long as

9    he agrees that the statements were material --

10             THE COURT:  He did.

11             MR. NOLAN:  -- and that this whole -- the whole purpose

12   was to get funds he wasn't entitled to.

13             THE COURT:  Okay.  Do you agree with that, Mr. Kao?

14   The whole purpose of the misstatements were to get funds you were

15   not otherwise entitled to?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  All right.  And lastly, Counts 4,5, 6, 7,

18   and 8 are the money laundering counts.  And the Government has

19   detailed in paragraph 36 exactly where the checks went.  But can

20   you just tell me -- and you've told me you agree with paragraph

21   36, in your own words, what you did that constitutes the crimes

22   charged in Counts 4 through 8?

23             THE DEFENDANT:  The PPP loan proceeds were deposited

24   into the company's general business account.  That's the account

25   that all customer payments, invoices, transactions are conducted

1  out of.  That account held a very large balance in it of cash

2  after the PPP loan proceeds were deposited, in addition to what

3  we collect every day, every week, every month from our customers.

4       So I had discussed with our CFO about moving large cash

5  balances into higher interest bearing accounts.  And I understand

6  that because the funds were comingled with PPP funds, whatever

7  was moved, is the definition of money laundering, as Mr. Nolan

8  highlighted.

9       THE COURT:  Okay.  And it looks like Counts 4, 6, and

10  7, those checks went to the Navatek LLC account.  And then Counts

11  5 and 8, those checks are made payable to you.  Do you agree with

12  all of that?

13       THE DEFENDANT:  Yes, Your Honor.

14       THE COURT:  And because you're using electronic wires

15  among United States financial institutions, do you agree that

16  these check payments affected interstate commerce?

17       THE DEFENDANT:  Yes.  Yes, Your Honor.

18       THE COURT:  All right.  Mr. Nolan, anything further on

19  Counts 4 through 8?  You're still muted, Mr. Nolan.

20       MR. NOLAN:  Thank you.  I'm surprised I did that only

21  once today.  So I think Mr. Kao has covered that with Your Honor.

22       THE COURT:  All right.  Is there any other matter you

23  would like me to cover with the Defendant, Mr. Nolan?

24       MR. NOLAN:  There is not.  Thank you.

25       THE COURT:  All right.  Mr. Bakke, is there any reason

1  that you're aware that the Court should not accept to guilty plea

2  at this time?

3          MR. BAKKE:  No, Your Honor.

4          THE COURT:  All right.  Mr. Kao, I'm going to ask you

5  now, how do you plead to the charges in counts 1, 2, 3, 4, 5, 6,

6  7, and 8 of the indictment, guilty or not guilty?

7          THE DEFENDANT:  Guilty, Your Honor.

8          THE COURT:  The Court finds that the Defendant is fully

9  competent and capable of entering an informed plea, that his

10  guilty plea is knowing and voluntary, and supported by an

11  independent basis in fact concerning each of the essential

12  elements of the offenses.

13          I'm therefore signing a report and recommendation

14  concerning plea of guilty, and I recommend that the Defendant be

15  adjudged guilty and have sentence imposed.  Objections to this

16  report and recommendation are waived unless filed and served

17  within 14 days.

18          Mr. Kao, I'm also ordering Probation to prepare your

19  presentence report, and this document will be about you and your

20  case, and it will assist the District Judge at sentencing.  The

21  probation officer is going to interview you.  If you wish, your

22  attorney may be present at that interview.  And you and your

23  lawyer will have the chance to read that report before

24  sentencing, to file any written objections to it.  And you will

25  also have the opportunity to address the sentencing judge before

1    sentencing.

2         May we please have a sentencing date and time?

3         THE CLERK:  Yes, Your Honor.  Sentencing set for

4    Thursday, January 19, 2023, at 02:30 p.m., before Judge Kobayashi

5    in Aha Nonoi.

6         THE COURT:  Thank you.  Mr. Nolan, is there any

7    objection to the Defendant's continued release on bond?

8         MR. NOLAN:  No, Your Honor.

9         THE COURT:  Okay.  So I will permit the Defendant to

10   stay out on bond on the current conditions.  I don't have

11   anything further at this time.

12        Mr. Bakke, anything further for Mr. Kao?

13        MR. BAKKE:  Your Honor, yes.  And maybe Mr. Nolan might

14   agree with this, but I just want to make sure the record is clear

15   that Mr. Kao also has a pending federal case in Washington, D.C.,

16   and he has different counsel.  He has a public defender back

17   there.  That case is close to wrapping up with a plea.  They were

18   waiting to see what happened in this case.  But I just wanted it

19   to be clear that -- you have a plea deal in that case?

20        THE DEFENDANT:  I think it's contingent on this.  I

21   don't know what that means.

22        MR. BAKKE:  Yeah.  So I believe there's a plea deal to

23   resolve that case, and one of them is going to -- one of the

24   conditions is to have it somehow roll into this.  I don't know

25   exactly what they've worked out, but I just want to make it clear

 1  that he has not been made any promises or anything in that case

 2  regarding the outcome of this case.

 3        And so he's also under pretrial supervision with

 4  Washington D.C., as well.  So all those questions -- and so when

 5  we get to the sentencing date, we may request maybe to move that

 6  to accommodate maybe the Washington, D.C., case as well.

 7        THE COURT:  Okay.  That's fine.  I think you and Mr.

 8  Nolan can discuss that when the time comes.  Is that all right,

 9  Mr. Nolan?

10        MR. NOLAN:  Yes.  And just to be clear, there is no

11  agreement whether one case or the other will be transferred after

12  plea for sentencing purposes.  That could occur, but it may not

13  occur.

14        THE COURT:  Okay.  Thank you.  And I assume we can find

15  any District Judge on that.  So I think just see what comes, and

16  you can take it up as necessary.

17        Was there anything further, Mr. Bakke?

18        MR. BAKKE:  No, Your Honor.

19        THE COURT:  All right.  Mr. Nolan?

20        MR. NOLAN:  No.  Thank you, Your Honor.

21        THE COURT:  All right.  Thank you all.  Mr. Kao, best

22  of luck.  We will be in recess, everybody.

23        MR. BAKKE:  Thank you, Honor.  Hope you feel better.

24        THE DEFENDANT:  Thank you.

25      (Proceedings concluded at 2:46 p.m.)

CERTIFICATE

I, Jessica B. Cahill, Court approved transcriber, do hereby certify that pursuant to 28 U.S.C. §753, the foregoing is a complete, true, and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated: <u>October 14, 2022</u>

_Jessica B. Cahill_

Jessica B. Cahill, CER/CET-708