UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR. NO. 21-00061 LEK |
|---|---|
| Plaintiff, | |
| vs. | |
| MARTIN KAO, | |
| Defendant. | |

**ORDER DENYING DEFENDANT/INTERESTED PARTY MARTIN KAO'S OBJECTIONS TO AND APPEAL FROM DISPOSITIVE ORDER [DOCUMENT 92] OF MAGISTRATE JUDGE**

Before the Court is Defendant/Interested Party Martin Kao's ("Kao") Objections to and Appeal from Dispositive Order [Document 92] of Magistrate Judge ("Appeal"), filed on March 1, 2023. [Dkt. no. 93.] On March 23, 2023, Movant PacMar Technologies LLC formerly known as Martin Defense Group, LLC formerly known as Navatek LLC ("PacMar") filed its Response to Objections to and Appeal from Dispositive Order [Document 92] of Magistrate Judge ("PacMar Response"). [Dkt. no. 95.] Also on March 23, 2023, Plaintiff United States of America ("the Government") filed its Response to Defendant Martin Kao's Appeal (ECF No. 93) ("Government Response"). [Dkt. no. 96.] Kao filed his Reply to "PacMar Technologies LLC's Response to Objections to and Appeal from Dispositive Order [Document 92] of Magistrate Judge" [Document 95] ("Reply"). [Dkt. no. 98.] This matter

came on for hearing on April 13, 2023.  See Minutes, filed 4/13/23 (dkt. no. 100).  Kao's Appeal is hereby denied for the reasons set forth below.

## BACKGROUND

Kao was indicted on May 6, 2021 in the U.S. District Court for the District of Hawaii.  [Indictment ("2021 Indictment"), filed 5/6/21 (dkt. no. 31).]  Kao's cellular telephone was seized at the time of his arrest for the charges in the 2021 Indictment.  See Appeal at 1.  Kao "is the former CEO and Manager of the Martin Defense Group, LLC, fka Navatek LLC, nka Pacmar Technologies, LLC . . . ."  [Id.]  Kao was indicted in the U.S. District Court for the District of Columbia on February 10, 2022 "for alleged campaign finance violations" ("2022 Indictment"); [id. at 3;] and was indicted on January 5, 2023 in the U.S. District Court for the District of Hawaii for alleged "bank fraud and forfeiture relating to" real property located in Honolulu, Hawaii ("2023 Indictment"), [id. at 4].  On September 7, 2022, Kao pleaded guilty to Counts 1 through and including 8 of the 2021 Indictment before a magistrate judge.  See generally Minutes - EP: Video-Teleconference (VTC) on Motion for Withdrawal of Not Guilty Plea and to Plead Anew, filed 9/7/22 (dkt. no. 76).  Kao's pleas of guilty were accepted by this Court and he was adjudicated guilty of Counts 1 through 8 on September 22, 2022.  See Acceptance of Plea of Guilty,

2

Adjudication of Guilt and Notice of Sentencing, filed 9/22/22 (dkt. no. 79). Sentencing on Counts 1 through 8 is currently schedule for November 7, 2023. See EO, filed 2/6/23 (dkt. no. 88).

On January 24, 2023, PacMar filed its Motion for Return of Property Pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure ("PacMar Motion"). [Dkt. no. 82.] On February 15, 2023, the magistrate judge entered the Order Granting Motion for Return of Property Pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure ("2/15 Order"). [Dkt. no. 92]. In the Appeal, Kao objects to the 2/15 Order on numerous grounds: that the magistrate judge erred in entering an order; that PacMar's Motion was a dispositive pretrial motion and thus the magistrate judge erred by ruling on it without a referral and/or issuing his findings and recommendations (instead of an order); that the magistrate judge erred as a matter of law in determining that Kao did not have a privacy interest in the cellular telephone and the contents of its data; that Kao is being penalized for invoking his right against self-incrimination; that the magistrate judge erred as a matter of law by refusing to stay the request for return of property until Kao's criminal case is over; that PacMar's employment handbook does not give PacMar an ownership interest in the cellular telephone's data; that the magistrate judge erred by giving

3

PacMar the Government's work product, namely the evidence contained in the Cellebrite Extraction Reports;[1] that the magistrate judge failed to protect Kao's right to privacy; that the magistrate judge erred by ruling without first reviewing the contents of the data released for removal of personal information such as health information and personal search history; and the magistrate erred by failing to implement less drastic alternatives to a complete production, including appointing a special master.

## STANDARD

> Under 28 U.S.C. § 636(b)(1)(A):
>
> a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is **clearly erroneous or contrary to law**.

(emphasis added). Because the Appeal concerns a motion to return property and not, for example, a motion to suppress, the clearly erroneous standard applies. "Applying this standard, 'a

---

[1] Cellebrite is a Department of Justice forensic tool, which is used to extract data and such data is sometimes used in relation to criminal prosecutions. See Appeal at 14.

4

reviewing court must ask whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed.'" In re Optical Disk Drive Antitrust Litigation, 801 F.3d 1072, 1076 (9th Cir. 2015) (some internal quotation marks omitted) (quoting Easley v. Cromartie, 532 U.S. 234, 242, 121 S. Ct. 1452, 149 L. Ed. 2d 430 (2001)).

## **DISCUSSION**

Fed. R. Crim. P. 41(g) governs motions to return property in a criminal matter, which states:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

The proof required to be demonstrated by a movant who seeks return of property turns upon when the motion is filed:

> "A person aggrieved . . . by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). The burden of proof on a Rule 41(g) motion depends on when the defendant files the motion. "When a motion for return of property is made before an indictment is filed (but a criminal investigation is pending), the movant bears the burden of proving both that the [property's] seizure was illegal and that he or she is entitled to lawful possession of the property." United States v. Martinson, 809 F.2d 1364, 1369 (9th Cir. 1987) (citations omitted). But that burden of proof changes when "the property in question is no longer needed for

5

evidentiary purposes, either because trial is complete, the defendant has pleaded guilty, or . . . the government has abandoned its investigation." Id. Then, the burden of proof shifts and the defendant "is presumed to have a right to [the property's] return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property." Id.; see also United States v. Kriesel, 720 F.3d 1137, 1144 (9th Cir. 2013) (explaining that a "defendant's Rule 41(g) motion should presumptively be granted if the government no longer needs the property for evidence." (internal quotation marks and citation omitted)).

The government can rebut the presumption that property ought to be returned by proving a "legitimate reason" for retaining the property that is "reasonable[] under all of the circumstances." Kriesel, 720 F.3d at 1145; see also United States v. Kaczynski, 416 F.3d 971, 974 (9th Cir. 2005) ("[T]he government has the burden of showing that it has a legitimate reason to retain the property." (quotation marks omitted)); Ramsden v. United States, 2 F.3d 322, 326 (9th Cir. 1993) (explaining that "reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property." (internal quotation marks and citation omitted)). The Advisory Committee's Note to Rule 41, to which we give "weight in interpreting the Federal Rules of Criminal Procedure," United States v. Bainbridge, 746 F.3d 943, 947 (9th Cir. 2014), confirms the "reasonableness" standard applies to the return of computer files on electronic storage devices, see Fed. R. Crim. P. 41, Advisory Committee's Note to 2009 Amendment ("Rule 41(g) . . . provides a process for the 'person aggrieved' to seek an order from the court for a return of the property, including storage media or electronically stored information, under reasonable circumstances."). The simplest way for the government to carry its burden is to prove "the property . . . is contraband or subject to forfeiture." Martinson, 809 F.2d at 1369; see also United States v. Fitzen, 80 F.3d

6

> 387, 389 (9th Cir. 1996) ("It is well-settled
> that the federal government may defeat a
> Rule [41(g)] motion by demonstrating that the
> property is subject to federal forfeiture."). To
> that end, district courts "must receive evidence
> on any factual issue necessary to decide the
> motion." Fed. R. Crim. P. 41(g). The government
> can therefore carry its burden by submitting
> evidence that demonstrates the property is
> contraband or the property falls within the
> court's forfeiture order. See, e.g., [United
> States v.] Harrell, 530 F.3d [1051,] 1056-57
> [(9th Cir. 2008)]. But showing the property is
> contraband or forfeit is not the only way the
> government can justify retaining the property;
> the government can otherwise retain property if
> it can show a "legitimate reason" for doing so.
> See, e.g., Kriesel, 720 F.3d at 1145-47 (holding
> that the government's retention of the
> defendant's blood sample was "reasonable under
> the circumstances" because the government needed
> the sample to ensure the accuracy of future DNA
> identifications).

United States v. Gladding, 775 F.3d 1149, 1152-53 (9th Cir. 2014) (some alterations in Gladding).

Here, PacMar filed its Rule 41(g) motion after Kao pleaded guilty to the charges that serve the basis for his arrest and the seizure of the cellular telephone. A presumption thus existed that the cellular telephone should be returned unless there was a "legitimate reason" for the Government to retain it that was "reasonable". The Government did not object to returning a copy of the data extracted from the cellular telephone and represented that the cellular telephone "constitutes and contains evidence in [both the 2021 Indictment and the 2023 Indictment cases]." [Government's Response to

7

Motion for Return of Property Pursuant to Rule 41(g), filed 1/26/23 (dkt. no. 84), at 2.] It requested that the return should be limited to a copy of the data extracted. See id. at 3.

Under the circumstances of this matter, the Court finds that PacMar is a "person aggrieved" "by the deprivation of property" for purposes of a Rule 41(g) motion and, because Kao has pleaded guilty, PacMar is presumed to have a right to the cellular telephone's return. The burden, then, shifts to the Government to demonstrate that it has a legitimate reason to retain the property. Because the Government has demonstrated that it needs the cellular telephone (or more correctly, the contents of the cellular telephone, which is the data), it has partially rebutted the presumption of return. Rule 41(g) provides, in relevant part, that in granting the Rule 41(g) motion, the property must be returned but the Court "may impose reasonable conditions to protect access to the property and its use in later proceedings." Fed. R. Crim. P. 41(g).

The Court further finds that a reasonable condition is that the return of property should be limited to a copy of the cellular telephone's contents; *i.e.*, the data, and that the cellular telephone itself may continue to be retained by the Government until Kao's sentencing has been completed for those criminal charges covered by the 2021 Indictment, and the

completion of the criminal charges covered by the 2023 Indictment, when the Government no longer has any evidentiary need for the property in question.

Kao argues that he has a Fifth Amendment privilege that prevents return of the property in question. He has pleaded guilty to Counts 1 through 8 of the 2021 Indictment. He has waived his right to self-incrimination only as to the crimes that he admitted. United States v. Pierce, 561 F.2d 735, 738 (9th Cir. 1977) ("The defendant retains his privilege as to crimes for which he may still be liable." (citations omitted)). It is undisputed that the cellular telephone was seized when Kao was arrested in relation to the 2021 Indictment, although the Government has vaguely represented that the data taken from the cellular telephone may also pertain to criminal charges contained in the 2023 Indictment.

First, Kao fails to explain why the contents of the cellular telephone are protected by his Fifth Amendment right against self-incrimination in the 2023 Indictment or some other crime charged against him. If it is because the seizure and search were illegal as to one or more of these offenses, then the proper course of action is a motion to suppress.

Second, certain acts, while incriminating, are not within the privilege against self-incrimination. See, e.g., Doe v. United States, 487 U.S. 201, 210 (1988) (noting that a

suspect may be compelled to provide blood sample or voice exemplar).  However, even if the seizure and search of the cellular telephone was permissible, the self-incrimination privilege protects verbal and written communications as well as acts that imply assertions of fact, if testimonial.  See id. at 219.  "The difficult question whether a compelled communication is testimonial for purposes of applying the Fifth Amendment often depends on the facts and circumstance of the particular case."  Id. at 214-15 (citation omitted).  The Court finds that Kao has not demonstrated facts as to which parts of the data contained on the cellular telephone are testimonial and thus protected by the privilege.

Third, Kao argues that his right to privacy protects the data contained on the cellular telephone from being disclosed.

> [A] criminal defendant may invoke the protections of the Fourth Amendment only if he can show that he had a **legitimate** expectation of privacy in the place searched or the item seized.  Smith v. Maryland, 442 U.S. 735, 740, 99 S. Ct. 2577, 61 L. Ed.2d 220 (1979).  This expectation is established where the claimant can show: (1) a subjective expectation of privacy; and (2) an objectively reasonable expectation of privacy.  See id. (citing Katz [v. United States], 389 U.S. [347,] 351, 361, 88 S. Ct. 507[, 19 L. Ed. 2d 576 (1967)]); United States v. Shryock, 342 F.3d 948, 978 (9th Cir. 2003).  It is [the defendant's] burden to prove both elements.  United States v. Caymen, 404 F.3d 1196, 1199 (9th Cir. 2005) (citation omitted).

United States v. Ziegler, 474 F.3d 1184, 1189 (9th Cir. 2007) (emphasis in Ziegler). Kao contends that he had a subjective expectation of privacy as to the content he created or kept on the cellular telephone's data. Pertinent to the second element, he must demonstrate whether it was objectively reasonable to expect privacy on the company-owned cellular telephone; whether the cellular telephone's data was password protected; and whether he gave valid consent to the Government to search the cellular telephone and obtain the data. Kao has the burden of proving that he had an objectively reasonable expectation of privacy, but he provides no evidence.

Finally, Kao contends that the magistrate judge should have ordered that Kao inspect the data for personal information before it is produced and should have required a basic inventory of the files. If the data was obtained from the cellular telephone taken from Kao, then presumably he could or did obtain a copy of it in discovery. If not, then a motion to compel is the proper vehicle. Kao contents that "a special master should be appointed at PacMar's cost to review and segregate the data[]" obtained from the cellular telephone. [Appeal at 19. ] Kao, however, provides no legal authority for this proposition. The Court thus denies the request.

Ultimately, although the 2/15 Order does not provide an analysis of the law and facts it relied upon, the Government

11

has demonstrated the requisite showing to keep the cellular telephone and produced data.  Based on the aforementioned analysis, the Court cannot conclude that the magistrate judge was clearly erroneous in granting PacMar's motion.  The privacy right arguments raised by Kao are more appropriate for consideration in the civil lawsuits filed against Kao in the context of a motion for protective order.  Therefore, the Government is directed to provide a copy of the data extracted from the cellular telephone to PacMar by **May 1, 2023**.  Accordingly, the Appeal is denied.

## CONCLUSION

On the basis of the foregoing, Kao's Objections to and Appeal from Dispositive Order [Document 92] of Magistrate Judge filed March 1, 2023, is HEREBY DENIED.  The Government is DIRECTED to provide a copy of the data extracted from the cellular telephone to PacMar by **May 1, 2023**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 14, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**UNITED STATES OF AMERICA VS. MARTIN KAO; CR 21-00061 LEK; ORDER DENYING DEFENDANT/INTEREST PARTY MARTIN KAO'S OBJECTIONS TO AND APPEAL FROM DISPOSITIVE ORDER [DOCUMENT 92] OF MAGISTRATE JUDGE**