

U.S. Department of Justice

*United States Attorney*
*District of Hawai'i*

| | |
|---|---|
| *PJKK Federal Building* | *(808) 541-2850* |
| *300 Ala Moana Blvd., Room 6-100* | *FAX (808) 541-2958* |
| *Honolulu, Hawaii 96850* | |

September 6, 2022

By E-mail
The Hon. Kenneth J. Mansfield
United States Magistrate Judge
District of Hawaii
300 Ala Moana Blvd
Honolulu, HI 96850

    Re:   <u>United States v. Martin Kao</u>, Cr. No. 21-00061 LEK

Dear Judge Mansfield:

    I write in anticipation that on September 7, 2022, the defendant Martin Kao will enter guilty pleas to all counts in the Indictment (ECF No. 31) in this matter. The parties have not entered into a plea agreement.

## Penalties

    The penalties for the offenses to which the defendant is pleading guilty include:

    1.    As to each of Counts 1-3 (wire fraud), a term of imprisonment of up to 30 years and a fine of up to $1,000,000, plus a term of supervised release up to 5 years.

    2.    As to each of Counts 4-8 (money laundering), a term of imprisonment of up to 10 years and a fine of up to $250,000 or twice the amount of the criminally derived property involved in the transaction, whichever is greater, plus a term of supervised release up to 3 years.

    3.    In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty.

4. *Forfeiture*.  Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity within the meaning of 18 U.S.C. § 1956(c)(7) or a conspiracy to commit such offense; and pursuant to 18 U.S.C. § 982(a)(1), forfeiture of any property, real or personal, involved in an offense in violation of 18 U.S.C. § 1956, 1957, or 1960, and property traceable to such property.  The amount subject to forfeiture is <u>not less than $12,841,490 and may be greater</u>.

5. *Restitution*.  The Court must also award restitution pursuant to Title 18, United States Code, Section 3663A, to the persons and entities victimized by the defendant's offenses.  The restitution amount the defendant must pay is <u>not less than $13,181,787.62 and may be greater</u>, which consists of loan principal, accrued interest, and processing fees as of December 17, 2021 for the Paycheck Protection Program loans fraudulently obtained by the defendant in connection with the charged scheme and upon which the defendant and his companies defaulted, resulting in the purchase of the defaulted loans by the Small Business Administration, which had guaranteed the loans.

## Elements

### Counts 1-3: Wire Fraud (18 U.S.C. § 1343)

1. The defendant knowingly devised, intended to devise, or participated in a scheme to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises.

2. The statements made as part of the scheme were material, that is they had a natural tendency to influence, or were capable of influencing, a person to part with money or property.

3. The defendant acted with the intent to defraud, that is, the intent to deceive or cheat.

4. The defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

5. The violation affected a financial institution, or involved a presidentially declared major disaster or emergency.

<u>Counts 4-8: Money Laundering (18 U.S.C. § 1957)</u>

1. The defendant knowingly engaged or attempted to engage in a monetary transaction.

2. The defendant knew the transaction involved criminally derived property.

3. The property had a value greater than $10,000.

4. The property was, in fact, derived from wire fraud.

**Factual Basis**

If this matter were to proceed to trial, the government would prove the following facts through the introduction of witness testimony, forensic digital evidence, company, bank and other records, statements by the defendant and his co-conspirators, and other evidence.

*The Defendant and the Navatek Entities*

1. During the period from approximately March 2020 through July 2020, Defendant Martin Kao owned 99% of Navatek LLC, and served as its Chief Executive Officer. Headquartered in Honolulu, Hawaii, Navatek LLC was a research, engineering, design, and innovations company that specialized in novel systems for the Department of Defense ("DOD") and other partners in academia and other scientific fields. Nearly all of Navatek LLC's revenue was from the DOD. On approximately July 27, 2020, Navatek LLC changed its name to Martin Defense Group, LLC. Navatek LLC was the sole member and manager of Navatek CFD Technologies LLC, Navatek Lifting Body Technologies LLC, Navatek Alternative Energy Technologies LLC, and Navatek SHC LLC (collectively, the "Navatek Subsidiaries").

*The Paycheck Protection Program*

2. On March 13, 2020, the President of the United States declared a nationwide emergency pursuant to Sec. 501(b) of Stafford Act, 42 U.S.C. § 5121 *et seq.*, due to the COVID-19 pandemic. In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES"), which provided for the establishment of the Paycheck Protection Program ("PPP"). To obtain a PPP loan a qualifying business was required to submit a PPP loan application signed by an authorized representative. The PPP loan application required, among other

things, the representative to acknowledge the program rules; make specified affirmative certifications; state the applicant's average monthly payroll expenses and number of employees, which were used to calculate the amount of money the applicant was eligible to receive under the PPP; and provide documentation supporting the payroll expenses.

*Counts 1–3: Wire Fraud (18 U.S.C. § 1343)*

3. During approximately March 2020 through July 2020, the defendant knowingly devised and intended to devise a scheme and artifice to obtain money for which the defendant, Navatek LLC, and the Navatek Subsidiaries were not eligible to receive under the PPP by submitting and causing to be submitted false and fraudulent PPP loan applications and representations to Bank 1, Bank 2, and Bank 3. As a result the defendant fraudulently obtained more than $12.8 million in PPP funds for his companies and transferred approximately $2 million of those PPP funds to himself for his personal benefit.

*The Defendant's PPP Loan Application to Bank 1*

4. On April 3, 2020, the defendant caused to be submitted to Bank 1, which was a Hawaii-based community bank, a PPP loan application in the name and tax identification number of Navatek LLC signed by the defendant seeking the maximum amount of $10 million in PPP funds. The application contained materially false and fraudulent representations as to average monthly payroll, number of employees, and ownership of or common management with any other business (hereinafter, the "Bank 1 PPP loan application").

5. In the Bank 1 PPP loan application, the defendant falsely and fraudulently stated that Navatek LLC had an average monthly payroll of $4,072,000, when the defendant knew that Navatek LLC and the Navatek Subsidiaries had a combined average monthly payroll of approximately $829,385 during calendar year 2019 and through the application date.

6. In the Bank 1 PPP loan application, the defendant falsely and fraudulently stated that Navatek LLC had 490 employees, when the defendant knew that Navatek LLC and the Navatek Subsidiaries collectively employed approximately 140 employees during calendar year 2019 and through the application date.

7. In the Bank 1 PPP loan application, the defendant falsely and fraudulently responded "No" to Question 3 that asked: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" The defendant's response was false and fraudulent because, as the defendant knew, the defendant owned and managed the Navatek Subsidiaries through his ownership and control of Navatek LLC. By responding falsely and fraudulently, the defendant avoided listing all such businesses and describing the relationship of the businesses, as required for an affirmative response to Question 3.

8. In the Bank 1 PPP loan application, the defendant falsely and fraudulently certified that, from February 15, 2020 to December 31, 2020, Navatek LLC "has not and will not receive another loan under the [PPP]."

9. In the Bank 1 PPP loan application, the defendant falsely and fraudulently certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

10. In support of the Bank 1 PPP loan application, the defendant caused to be submitted a false and fraudulent spreadsheet used to calculate applicant Navatek LLC's average monthly payroll and number of employees that, as the defendant knew, included costs for employees that did not exist and were not eligible for inclusion.

11. During approximately April 2020 through July 2020, the defendant made additional false and fraudulent representations to Bank 1 in support of the Bank 1 PPP loan application, intending these representations to pressure Bank 1 into quickly and without scrutiny approving the Bank 1 PPP loan application and to conceal the scheme.

12. By April 18, 2020, Bank 1 issued and funded the requested PPP loan by depositing $10 million into Navatek LLC's business checking account ending in 9145 at Bank 1.

13. In 2021 Navatek LLC defaulted on the $10 million PPP loan from Bank 1.

*The Defendant's PPP Loan Application to Bank 2*

14. On approximately April 20, 2020, the defendant caused to be submitted to Bank 2, which was mainland-based national bank, a PPP loan application in the name and tax identification number of Navatek CFD Technologies LLC signed by the defendant seeking $2,841,490 in PPP funds. The application contained materially false and fraudulent representations as to average monthly payroll, number of employees, and ownership of or common management with any other business (hereinafter the "Bank 2 PPP loan application").

15. In an email accompanying the Bank 2 PPP loan application, the defendant falsely and fraudulently stated to a President of Bank 2: "[W]e did submit an application with a local Hawaii bank for a completely separate company, and that is the one that got fumbled." The defendant's representation in the email was false and fraudulent because, as the defendant knew, the PPP application to which he referred in the email had been approved and funded by Bank 1, and the applicant for the Bank 1 PPP loan was not a "completely separate company." In fact, the applicant for the first PPP loan was Navatek LLC, the entity that owned Navatek CFD Technologies LLC.

16. In the Bank 2 PPP loan application, the defendant falsely and fraudulently stated that Navatek CFD Technologies LLC had an average monthly payroll of $1,136,596, when the defendant knew that Navatek CFD Technologies LLC had an average monthly payroll of approximately $276,450 during calendar year 2019 and through the application date.

17. In the Bank 2 PPP loan application, the defendant falsely and fraudulently stated that Navatek CFD Technologies LLC had 140 employees, when the defendant knew that Navatek CFD Technologies LLC employed approximately 40 employees during calendar year 2019 and through the application date.

18. In the Bank 2 PPP loan application, the defendant falsely and fraudulently responded "No" to Question 3 that asked: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" The defendant's response was false and fraudulent because, as the defendant knew, the defendant owned and managed the Navatek Subsidiaries, including Navatek CFD Technologies LLC, through his ownership and control of Navatek LLC. By responding falsely, the defendant avoided listing all such businesses and describing the relationship of the businesses as required for an affirmative response to Question 3, and thereby avoided the

possibility that Bank 2 and the SBA would determine that Navatek CFD Technologies LLC was not eligible for a PPP loan due to the Bank 1 PPP loan to Navatek LLC.

19. In the Bank 2 PPP loan application, the defendant falsely and fraudulently certified that, from February 15, 2020 to December 31, 2020, Navatek CFD Technologies LLC "has not and will not receive another loan under the [PPP]," when the defendant knew that Navatek CFD Technologies LLC had approximately two days earlier received the Bank 1 PPP loan in the amount of $10 million in the name of Navatek LLC.

20. In the Bank 2 PPP loan application, the defendant falsely and fraudulently certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

21. During approximately April 2020 through July 2020, the defendant made additional false and fraudulent representations to Bank 2 and others in support of the Bank 2 PPP loan application and to conceal the scheme.

22. By May 6, 2020, Bank 2 had issued and funded the requested PPP loan by depositing approximately $2,841,490 into Navatek LLC's account ending in 9145 at Bank 1.

23. On approximately May 4, 2020, after Bank 2's approval of the PPP loan application and funding of the Bank 2 PPP loan, the defendant altered the previously-submitted, fully-executed promissory note for the Bank 2 PPP loan by deleting all references to the PPP. The defendant then provided the altered note to others to conceal his scheme to defraud.

24. In 2021 Navatek LLC and Navatek CFD Technologies LLC defaulted on the PPP loan from Bank 2.

*The Defendant's PPP Loan Application to Bank 3*

25. On April 21, 2020, the defendant caused to be submitted to Bank 3, which was a Hawaii-based regional bank, a PPP loan application in the name and tax identification number of Navatek SHC LLC signed by the defendant seeking $2,852,839 in PPP funds and containing materially false and fraudulent representations as to average monthly payroll, number of employees, and

ownership of or common management with any other business (hereinafter the "Bank 3 PPP loan application").

26. In an email accompanying the Bank 3 PPP loan application, the defendant falsely and fraudulently stated to a Vice President of Bank 3:

> As we discussed, we dropped the ball with timing and process the first time. Our entire company structure is complicated to say the least. With operations/offices/employees and entities all over the country, we really got confused on how to apply. Long story…short…we discussed with SBA and figured it out…too late. We'll [sic] here is hopefully our second chance. The SHC Entity is our (Salaries Hawaii Company) entity. We are applying under that entity alone and told that is the way to correctly do it. So the application is correct and all calculation have been reviewed to eliminate all salary amounts in excess of $100K.

The defendant's representations in the email were false and fraudulent because, as the defendant knew, the PPP loan application to which he referred in the email had been approved and funded by Bank 1.

27. In the Bank 3 PPP loan application, the defendant falsely and fraudulently stated that Navatek SHC LLC had an average monthly payroll of $1,141,136, when the defendant knew that Navatek SHC LLC had no payroll during calendar year 2019 and through the application date.

28. In the Bank 3 PPP loan application, the defendant falsely and fraudulently stated that Navatek SHC LLC had 140 employees, when the defendant knew that Navatek SHC LLC had no employees during calendar year 2019 and through the application date.

29. In the Bank 3 PPP loan application, the defendant falsely and fraudulently responded "No" to Question 3 that asked: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" The defendant's response was false and fraudulent because, as the defendant knew, the defendant owned and managed the Navatek Subsidiaries, including Navatek SHC LLC, through his ownership and control of Navatek LLC. By responding falsely, the defendant initially avoided listing all such businesses and describing the relationship of the businesses as required for an affirmative response to Question 3, and thereby initially avoided

8

the possibility that Bank 3 and the SBA would determine that Navatek SHC LLC was not eligible for a PPP loan due to the Bank 1 PPP loan to Navatek LLC.

30. In the Bank 3 PPP loan application, the defendant falsely and fraudulently certified that, from February 15, 2020 to December 31, 2020, Navatek SHC LLC "has not and will not receive another loan under the [PPP]," when the defendant knew that Navatek SHC LLC had approximately three days earlier received the Bank 1 PPP loan in the name of Navatek LLC.

31. In the Bank 3 PPP loan application, the defendant falsely and fraudulently certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

32. From approximately April 2020 through July 2020, the defendant made additional false and fraudulent statements to Bank 3 in support of the Bank 3 PPP loan application, false and fraudulent representations and certifications in revised submissions of the Bank 3 PPP loan application, and false and fraudulent statements to Bank 3 and others to conceal the scheme.

33. After a Vice President at Bank 3 informed the defendant that Navatek SHC LLC's tax identification number was different from those stated on payroll forms submitted in support of the loan application, the defendant falsely and fraudulently stated in an email to the Vice President: "[T]he varying entities have employees, but all payroll is 'cleared' through SHC (Salaries Hawaii Company, LLC)." The defendant's statement was false and fraudulent because, as the defendant knew, payroll was not "cleared" through Navatek SHC LLC. In response to the defendant's email, the Vice President instructed the defendant to submit applications in the names of the entities that paid the employees.

34. After the defendant submitted revised Bank 3 PPP loan applications in the names and tax identification numbers of Navatek LLC and Navatek CFD Technologies LLC, Bank 3 determined through SBA systems that each of those two entities had already been approved for a PPP loan. When so advised by the Bank 3 Vice President, the defendant falsely and fraudulently stated in an email to the Vice President on or about April 29, 2020: "After much a do [*sic*] last night and this morning, we have made no progress on getting to the bottom of this and with SBA on getting the actual approval notifications or numbers." The defendant then abandoned his efforts to obtain additional PPP loans from Bank 3.

*The Interstate Wires*

35.  In executing the charged scheme, the defendant caused to be transmitted by means of interstate wire the following:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | 04/03/2020 | Submission of a PPP Application to Bank 1 via Internet Portal |
| 2 | 04/20/2020 | Submission of a PPP Application to Bank 2 via Email |
| 3 | 04/21/2020 | Submission of a PPP Application to Bank 3 via Email |

Each of the foregoing three electronic loan application submissions traveled across state lines from Hawaii and through servers on the United States mainland.

//

//

//

//

//

//

//

//

//

//

//

//

*Counts 4-8: Money Laundering (18 U.S.C. § 1957)*

36. On the following dates, the defendant deposited into the specified accounts the specified checks payable as specified and drawn on Navatek LLC's account ending in 9145 at Bank 1. As the defendant knew, each deposit included more than $10,000 of proceeds derived from Bank 1's approval of the defendant's fraudulent PPP application charged in Count 1 as wire fraud. Each deposit affected interstate commerce by, among other things, utilizing interstate systems for the electronic transfer of funds between and among financial institutions in the United States.

| Date of Transaction | Description of Transaction | Disposition of Funds | Transaction Amount |
|---|---|---|---|
| 04/21/2020 | Check no. 31029 payable to NAVATEK, LLC | Deposited into Navatek's Merrill Lynch account no. XXX-X3506 | $2,000,000 |
| 04/22/2020 | Check no. 30986 payable to MARTIN KAO | Deposited into Defendant's Personal Merrill Lynch account no. XXX-X2641 | $2,000,000 |
| 04/29/2020 | Check no. 31124 payable to NAVATEK, LLC | Deposited into Navatek's Merrill Lynch account no. XXX-X3506 | $3,000,000 |
| 05/07/2020 | Check no. 31127 payable to NAVATEK, LLC | Deposited into Navatek's Merrill Lynch account no. XXX-X3506 | $3,000,000 |
| 05/18/2020 | Check no. 31249 payable to MARTIN KAO | Deposited into Defendant's Personal FHB account no. XX-XX1787 | $20,200 |

        Respectfully submitted,

        CLARE E. CONNORS
        United States Attorney
        District of Hawaii

By:   */s/ Craig S. Nolan*
        CRAIG S. NOLAN
        Assistant U.S. Attorney
        JENNIFER L. BILINKAS
        Trial Attorney
        Criminal Division, Fraud Section
        U.S. Department of Justice

cc: Victor J. Bakke, Esq., Attorney for Defendant