LAW OFFICE OF VICTOR J. BAKKE

VICTOR J. BAKKE            5749
700 Bishop Street, Suite 2100
Honolulu, Hawaii  96813
Telephone: (808) 369-8170
Facsimile: (808) 369-8179
E-Mail: vbakke@bakkelawfirm.com

Attorney for Defendant
MARTIN KAO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 21-00061 JAO |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S SENTENCING STATEMENT; EXHIBIT "A"; CERTIFICATE OF SERVICE** |
| vs. | ) | |
| | ) | |
| MARTIN KAO, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING STATEMENT**

COMES NOW, Defendant MARTIN KAO ("Defendant"), by and through his undersigned counsel, and hereby respectfully submits his Sentencing Statement in response to the Draft Presentence Investigation Report (1) [ECF No. 103] (the "PSR") in this matter as follows:

1

1. **Page 16, paragraphs #58, #59 and #60 "Loss":**

Sentencing in Federal fraud cases is driven by loss amounts. To seek a higher sentencing guidelines range, the government often relies on a defendant's "intended" loss," rather than the "actual" loss. However, that approach was recently rejected by the Third Circuit in United States v. Banks, 55 F.4th 246, 255–59 (3d Cir. 2022).

In Banks, the court of appeals ruled that "loss" as stated in the U.S. Sentencing Guidelines §2B1.1 refers only to "actual" and not "intended" loss.

At sentencing, the district court calculated an advisory Guidelines range under U.S. Sentencing Guidelines §2B1.1 based on Banks' intended loss. Section 2B1.1 provides for a base offense level of seven and additional increases based upon the amount of "loss." Section 2B1.1 does not itself define loss, but the Sentencing Commission's commentary states that "loss" is "the greater of actual or intended loss," with "intended loss" being "pecuniary harm that the defendant purposely sought to inflict," regardless of whether the loss "would have been impossible or unlikely to occur." Id. at cmt. 3(A); (ii). Using Banks' intended loss of greater than $250,000 and less than $550,000, the court increased the offense level by 12. See U.S.S.G. § 2B1.1(b)(1)(G). The court ultimately sentenced Banks to 104 months in prison.

On appeal, the Third Circuit rejected the commentary to § 2B1.1 that defined "loss" to include intended loss. Banks was guided by a prior Third Circuit decision that held that the Supreme Court's decision in Kisor v. Wilkie, 139 S. Ct. 2400 (2019) narrowing *Auer* deference applied to the Sentencing Commission's commentary. In the Third Circuit's view, "[i]f the Sentencing Commission's commentary sweeps more broadly than the plain language of the guideline it interprets, we must not reflexively defer." The court of appeals found no ambiguity in §2B1.1's use of the word "loss," and held that the commentary's addition of "intended loss" swept beyond the word's plain language. The court remanded the case for resentencing.

It should be noted however, that the Eleventh Circuit, rejected the Third Circuit's analysis and conclusion, holding instead that the commentary at §2B1.1 is "binding on the courts because it does not contradict the plain meaning of the text of the Guidelines." United States v. Moss, 34 F.4th 1176, 1190 (11th Cir. 2022) (quotations omitted).

In the present case, the money that was loaned to Defendant Kao was repaid in full so, in fact, there was no loss to Central Pacific Bank and/or Radius Bank.

However, paragraph #60 states that Defendant should receive a massive 20 level increase based upon the *intended* loss of $15,694,329 which is the sum total

of the 2 funded loans, plus the loan application that was made to First Hawaiian Bank which was later withdrawn by the Defendant.

As stated in Banks, the plain language of USSG 2B1.1(b)(1) only provides for an enhancement based upon loss, not "intended" loss. Accordingly, because there was no loss in this there cannot be a 20-level enhancement pursuant to USSG 2B1.1(b)(1).

Basing the loss enhancement on actual loss versus intended loss makes sense since the enhancement based on actual loss is meant to provide greater punishment in cases where there was greater harm inflicted via greater losses.

Assuming *arguendo*, that the "intended" loss test is utilized to determine the loss amount there still is no loss because the "intended" loss must be determined by the Defendant's subjective intent. (USSG App. C, amend. 792 (effective Nov. 1, 2015). Prior to the amendment, courts had differed as to whether the intended loss amount was based on the defendant's subjective intent or on an objective standard. Id.; see also United States v. Carrasquillo-Vilches, 33 F.4th 36, 41–44 (1st Cir. 2022) (discussing standard before and after the amendment and affirming loss amount because, even though the PSR referenced both standards, "the record amply support[ed] the finding that the defendant subjectively intended to inflict at least" the lowest loss amount required for the enhancement imposed).

The guidelines define intended loss as "pecuniary harm that the defendant purposely sought to inflict." USSG §2B1.1, comment. (n.3(A)(ii).

Determining intended loss is often a fact-specific inquiry. (See, e.g., United States v. Ainabe, 938 F.3d 685, 692 (5th Cir. 2019) ("[T]he appropriate method of calculating the amount of intended loss is determined by the facts of the case.").

A court's determination of whether to calculate intended loss at the full face value of the property at issue or some lesser amount often turns on whether the defendant intended to jeopardize, or in fact recklessly jeopardized, the full amount of the property. (*See*, e.g., United States v. Harris, 597 F.3d 242, 256–59 (5th Cir. 2010) (district court properly sentenced defendant based on the aggregate credit limit of the credit cards that she recklessly jeopardized by selling to third parties).

In the present case, the Defendant never intended to jeopardize the money that was received and/or that he intended to receive. Furthermore, Defendant Kao never "purposely sought" to inflict any pecuniary harm as required by USSG §2B1.1, comment. (n.3(A)(ii).

It is undisputed that Defendant applied for three "loans" that were merely backed by the SBA. Accordingly, those banks were free to grant or deny the Defendant's loan application just as they would do for any non-PPP loan. The loans that were granted to Mr. Kao were performing loans and the loans were never in default.

5

What makes this case unusual is that the PPP loan was a temporary and open-ended interest free loan wherein the banks did not lock in the terms of repayment.

Instead, the banks simply agreed that Defendant Kao must repay the loan back in full if, at a later date, it was determined that he was not eligible for the loan or that he did not "spend" the loan according to the terms set forth by the SBA.

The banks also agreed that Defendant had the option to convert the initial interest free loan into a low interest conventional loan if, at a later date, it was determined that he was not eligible for the loan or that he did not "spend" the loan according to the terms set forth by the SBA.

Because of this unprecedented loan structure, Defendant Kao applied for the temporary interest free PPP loans as a backup source of funding just in case the money was needed to keep his company solvent during the COVID epidemic. That does not mean, however, that Defendant intended to cause a loss to the lenders by keeping the money.

The problem is that the Government prematurely interjected itself into a private contract between the banks and Mr. Kao and that makes it impossible for them now to say that Mr. Kao would not have returned the money, or converted it to a low interest loan, at the end of the interest free time-period.

Simply put, Defendant Kao fully intended to repay the loans. First, Defendant's company had more than enough capital to collateralize the loans and the PPP money was just a rainy-day fund to help stabilize the company in the face of an uncertain and extended world pandemic. It has to be noted that the initial loan was an interest free loan was only temporary. Once the epidemic was over, Defendant Kao would have been forced to return the money because it was no longer needed, or he would have converted it into a low interest loan and repaid the loan in full. Either way, there was no intent to cause a loss to any of the lenders and there is no evidence to support a finding that the Defendant purposely sought to inflict pecuniary harm.

Consequently, the PSR should be amended by deleting the 20-level enhancement because the enhancement must be based on actual loss and/or because Defendant Kao did not intend to cause any loss to the lenders.

**2.      Page 17, Paragraph #63 Role in the Offense**

Defendant should not receive a 2 level enhancement under USSG Sec. 3B1.1(c) because he was not a leader or organizer.

Although Defendant was the leader of the company, that does not mean he was the leader or organizer of the loan fraud scheme. Instead, the evidence shows that Defendants Mr. Chen and Mr. Lum Kee played independent and equal roles in the planning and execution of the loan scheme.

Specifically, Defendant, Chen and Lum Kee were the three top ranking individuals at the company. Accordingly, they all played an equal role in the planning and execution of applying for the PPP loans and they all shared in the benefits with Chen and Lum Kee even receiving substantial pay raises as a result of their share of the extra payroll money.

During the Civil lawsuit/Arbitration brought by the company against the Defendant, the plaintiff hired former Honolulu FBI agent Tom Simon as an expert to investigate and review this case and to testify at the arbitration as to the nature and extent of the conduct of the Defendant, Mr. Chen and Mr. Lum Kee.

At the arbitration, former Honolulu FBI agent Simon testified that Defendant, Chen and Lum Kee were all equally responsible for the fraudulent scheme:

> Q. And with regard to Exhibit 129 where they are talking about max 3.5 million loan without looking like we are cooking anything, did you review a number of emails by and between Mr. Kahele Lum Kee, Mr. Cliff Chen and Mr. Kao?
>
> A. Yes. Mr. Kao was usually CC'd on emails like that.
>
> Q. Did it appear that Mr. Kao was in frequent contact by email with Mr. Lum Kee and Mr. Chen as to this PPP loan application?
>
> A. Yes, these three were sharing a brain throughout this entire process as far as getting these loans done.

See, Ex. "A" – Relevant Portions of Transcript of Arbitration Testimony of Former FBI Agent Tom Simon (Transcript pg. 399).

> Q. Because Mr. Kao is on all of these emails and is authoring many of them, is it plausible to you if he decides to blame Mr. Lum Kee and Mr. Chen, his lieutenants, as having done this?
>
> A. No. These guys were clearly in bed together making all this happen.

See, Ex. "A" – Relevant Portions of Transcript of Arbitration Testimony of Former FBI Agent Tom Simon (Transcript Page 404).

The purpose of USSG Sec. 3B1.1(c) is to impose extra punishment upon the leader or head of a group of individuals since they are more culpable than the subordinates who are just following the orders of the leader.

In the present case, the testimony of expert witness former FBI agent Tom Simon clearly shows that, in his expert opinion as professional investigator and law enforcement agent, that Defendant was not leader of the group and that this was in fact a situation where the three men were all equal co-conspirators in the entire scheme.

Mr. Chen and Mr. Lum Kee were each fully aware of the scope and purpose of the scheme and they often acted independently of Mr. Kao by utilizing their different skills within the group to accomplish their joint goal of obtaining the PPP loans.  The Defendant could not have made the loan applications by himself and there is no evidence that Defendant was any more responsible than Mr. Chen and Mr. Lum Kee in the overall process.

Consequently, the Defendant should not receive a 2 level enhancement under USSG Sec. 3B1.1(c) because he was not a leader or organizer.

DATED:  Honolulu, Hawaii, August 2, 2023.

                                                  /s/ *Victor J. Bakke*
                                                  VICTOR J. BAKKE

                                                  Attorney for Defendant
                                                  MARTIN KAO