**WARNING: THIS DOCUMENT IS FILED UNDER SEAL
PURSUANT TO CRIMINAL LOCAL RULE 32.2**

LAW OFFICE OF VICTOR J. BAKKE

VICTOR J. BAKKE              5749
700 Bishop Street, Suite 2100
Honolulu, Hawaii  96813
Telephone: (808) 369-8170
Facsimile: (808) 369-8179
E-Mail: vbakke@bakkelawfirm.com

Attorney for Defendant
MARTIN KAO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 21-00061 LEK |
|---|---|---|
| Plaintiff, | ) ) ) | **DEFENDANT'S SENTENCING MEMORANDUM IN SUPPORT OF A REASONABLE SENTENCE; EXHIBITS "A" – "B"; CERTIFICATE OF SERVICE** |
| vs. | ) ) ) | |
| MARTIN KAO, | ) ) | |
| Defendant. | ) ) ) ) ) | |

**DEFENDANT'S SENTENCING MEMORANDUM
IN SUPPORT OF A REASONABLE SENTENCE**

COMES NOW, Defendant MARTIN KAO ("Defendant or Mr. Kao"), by and through his undersigned counsel, hereby asks this Court to impose a reasonable sentence that is sufficient, but not greater than necessary, to satisfy the legal standards set forth in 18 U.S.C. Sec. 3353(a).

1

In addition, this memo specifically addresses the following issues: (1) That prison is harder for a first-time offender, (2) The impact of a Defendants age and risk of recidivism, (3) Post-offense rehabilitation and (4) Sentencing disparity.

### 1. A Reasonable Sentence Should Compensate For The Fact That Prison Is harder For A First Offender.

It has been held that a variance may be appropriate for a first-time offender because prison has greater significance for those imprisoned for the first time. *See* U.S. v. Baker, 445 F.3d 987 (7th Cir. 2006) (affirming non-guideline sentence of 78 months from 108 months for defendant convicted of distributing child porn, justified in part by judge's finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with goal of "just punishment" in § 3553(a)(2)(A) and "adequate deterrence" in Section 3553(a)(2)(B); see also U.S. v. Jewell, 2009 WL 1010877 (E.D.Ark. April 15, 2009) (defendant sentenced to 30 months in prison for aiding and abetting tax evasion, because guideline range near the statutory maximum of 5 years was inappropriate for first time offender); U.S. v. Cull, 446 F. Supp. 2d 961 (E.D. Wis. 2006) (non-guideline sentence of 2 months in jail and 4 months home confinement, where advisory range was 10-14 months for a marijuana offense by defendant who had never been confined, was sufficient to impress on him the seriousness of his crime and deter him from re-offending); U.S. v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally, a lesser prison

term is sufficient to deter one who has not been subject to prior lengthy incarceration).

Accordingly, this court should consider a variance for Mr. Kao based upon the fact that he is 51 years old and has never been incarcerated and that an extended period of imprisonment will have a disproportionate effect on him compared to other defendants' that fall under the same guideline range.

### 2.     Defendants' Age/ Recidivism

A reasonable sentence should take into consideration that Mr. Kao is 51 years old and poses little to no risk of recidivism.

(Departure warranted because guidelines fail to consider the length of time defendant refrains from commission of first crime, here until age 49.) U.S. v. Ward, 84 F, Supp 23 (E.D. Va. 1993); U.S. v. Bariek, 2005 WL 2334682 (E.D.Va., Sept. 23 2005) (unpub.) (where defendant convicted of operating unlicensed money business (sending funds to Afghanistan), guideline range of 37-46 months greater than necessary and sentence of 18 months imposed in part because "this is the defendant's first criminal offense. The defendant arrived in the United States in 1989 and later sought and obtained his United States citizenship. Since his arrival, he has maintained stable employment, has supported his family, and has become a well-respected member of the Afghan community. Further, there is no indication that the defendant poses a risk of recidivism. For each of these reasons, the Court

finds no compelling rehabilitation need as would be served by a lengthy term of incarceration. "); U.S. v. Lucania, 379 F.Supp.2d 288, 297 (E.D.N.Y. 200S) ("Post-Booker courts have noted that recidivism is markedly lower for older defendants."). U.S. v. CarmonaRodriguez, 200S WL 840464, *4 (S.D.N.Y. April 11, 200S) (unpub.) ( where an older woman pled guilty to distribution of drugs sentence of 30 months (below guideline range) proper in part "in view of the low probability that Carmona Rodriguez will recidivate." Defendants "over the age of forty... exhibit markedly lower rates of recidivism in comparison to younger defendants See Measuring Recidivism: The Criminal History -Computation of The Federal Sentencing Guidelines, at 12, 28 (2004) www.ussc .gov publication / Recidivism Center ("Recidivism rates decline relatively consistently as age increases").

 The defense submits that, under the unique circumstance of this case, that a lengthy term of imprisonment would be strictly punitive and that it should be shorter than say, for example, a drug Defendant or a sex offender who need to complete worthy rehabilitation programs within the confines of the prison.

 In contrast, Mr. Kao is 51 years old with no criminal history and was involved in a situation that will never occur again. He is well educated, has an exemplary work history, He has strong family support and extended caregiver

4

responsibilities, and he has engaged in extensive post offense rehabilitation over the past 4 years.

Accordingly, the empirical data, combined with Mr. Kao's individual situation, weighs heavily against a lengthy term of incarceration.

### 3.     Post Offense Rehabilitation

A variance in this case is warranted in light of Mr. Kao's *extraordinary* post offense rehabilitation.

United States v. Griffiths, 954 F. Supp. 738 (D. Vt. 1997).  Post-offense rehabilitative efforts – significant work and educational achievements –after arrest for LSD offense warranted downward departure.  United States v. Whitaker, 152 F.3d 1238 (10th Cir. 1998).  Extraordinary or exemplary post-offense drug rehabilitation may be a ground for downward departure.  United States v. Brock, 108 F.3d 31 (4th Cir. 1997).  Reversing pre-Koon circuit precedent, the Fourth Circuit held that post-offense rehabilitation may be a ground for a downward departure.  United States v. Jaroszenko, 92 F.3d 486 (7th Cir. 1996).  Case remanded because court incorrectly believed that it could not depart on post-offense extraordinary remorse.  United States v. Maier, 975 F.2d 944, 946-49 (2d Cir. 1992).  Affirmed downward departure based on defendant's post-offense drug rehabilitation.

It is undisputed that, after being arrested, different offenders make different choices and have different experiences, and those differences can suggest appropriately different treatment by judges, correctional officials, probation and parole supervisors, and other decision makers in the criminal justice system.

The relevance of post-offense conduct to punishment has been endorsed in practice in court opinions, statutes, and sentencing guidelines across the jurisdictions. In Pepper v. United States, 562 U.S. 476 (2011), the Court made it clear that sentencing courts may consider a very wide range of information about the offender, more than just the particular acts by which the offense was committed, including the offender's life, characteristics, and propensities.

Additionally, the United States Federal Sentencing Guidelines expressly recognize the possibility of reduction in punishment due to positive post-offense conduct, like the acceptance of responsibility for the offense, the disclosure of an offense that would have otherwise remained undiscovered, cooperation with the government in the prosecution of others and post-offense rehabilitative efforts.

The United Nations and other international bodies also emphasize that the primary aim of imprisonment should be the reformation and social rehabilitation of offenders, to prepare them for reintegration into society upon release.

Hawaii has adopted this ideology as well. In 2022, the Hawaii Department of Public Safety was reestablished as the Department of Corrections and

Rehabilitation under a bill signed into law by Gov. David Ige. The department's vision now centers around transforming the state's correctional system, which has been historically perceived as a punitive model, to a focus on rehabilitation and restoration, and reducing recidivism.

In the present case, Mr. Kao's post offense rehabilitation is truly exceptional.   The following is a list of some of his efforts and accomplishments:

1. Church and Weekly Bible Study
2. Applied - The American Red Cross - REJECTED  (Background search)
3. Volunteer - Hawaii Meals on Wheels
4. Volunteer - University Ave. Baptist Church
5. Katsumidori Japanese Izakaya - Dishwasher
6. ***The Cheesecake Factory - Line Cook, Dishwasher, Maintenance***
7. NAMI - National Association for Mental Illness
8. Kapiolani Community College: Culinary Institute of the Pacific (Open - In Progress)
9. ***Harvard University, Graduate Continuing Education - MBM, Masters of Business Management (Open - In Progress)***
10. Volunteer - Miranda Ministries, Cook
11. Cooperation and assistance with the Department of Justice and FBI - Main Justice and Washington DC, ongoing investigations.
12. Enrolled and participated in Hawaii Department of Human Services - First To Work Program
13. Applied to 6 Civil Service Job Opportunities with the State of Hawaii

    a. INMATE GRIEVANCE SPECIALIST - DEPARTMENT OF CORRECTIONS AND REHABILITATION - DOWNTOWN, OAHU (Waiting for Response)
    b. AUDITOR V - DEPARTMENT OF TAXATION - OAHU (REJECTED)
    c. PARKS DISTRICT SUPERINTENDENT II - MANOA TO KAHALA, OAHU (Waiting for Response)
    d. BUSINESS MANAGER V - OAHU (Waiting for Response)

7

Case 1:21-cr-00061-LEK   Document 144   Filed 02/07/25   Page 8 of 10   PageID.1157

  e. COOK III - SHIFT WORK - OAHU CORRECTIONAL FACILITIES (REJECTED)
  f. BUSINESS REGISTRATION ASSISTANT - OAHU (Waiting for Response)

Mr. Kao's extraordinary post offense actions clearly demonstrate a significant and genuine effort to address the root causes of his behavior and his offenses. They also represent a commitment to personal growth and accountability which should not be ignored in determining a reasonable sentence in this case.

Mr. Kao's post offense journey from the kitchen to the campus also serves as a positive example to a broad range of Defendants that personal reflection and hard work are valued and can make a difference in their sentence and in their life.

Accordingly, a lengthy term of imprisonment of 87 months would do nothing to assist with Mr. Kao's rehabilitation and instead, it could have the unintended side-effect of discouraging others to better themselves.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

8



### 4.     Sentencing Disparity

According to the IRS website:

March 28, 2024

Washington - Four years after the enactment of a key pandemic-era law, the Internal Revenue Service released updated numbers showing Criminal Investigation (CI) has investigated 1,644 tax and money laundering cases related to COVID fraud potentially totaling $8.9 billion, with well over half that amount coming from cases opened in the last year.

These cases include a wide range of criminal activity, including fraudulently obtained loans, credits and payments meant for American workers, families and small businesses under the Coronavirus Aid, Relief and Economic Security (CARES) Act.

As of Feb. 29, 795 people have been indicted for their alleged COVID-related crimes and 373 individuals have been sentenced to an average of 34 months in federal prison. During the last four years, CI has obtained a 98.5% conviction rate in prosecuted COVID fraud cases.

Upon review, many of the prosecuted cases involved Defendants who applied for loans to subsidize non-existent companies and then used the money to enrich themselves by purchasing extravagant luxury items.

In contrast, Mr. Kao did not need the money to achieve or maintain a wealthy lifestyle. Mr. Kao had a successful company, and the funding was for the primary purpose of protecting his business during the uncertainty of the COVID pandemic. Ironically, unlike the majority of other cases, Mr. Kao's abuse of the loan program actually resulted in the destruction of Mr. Kao's finances and his career.

Consequently, a sentence below the recommended sentence of 87 months is warranted when compared to the average sentence of 34 months in other cases.

DATED: Honolulu, Hawaii, February 7, 2025.

> */s/ Victor J. Bakke*
> VICTOR J. BAKKE
>
> Attorney for Defendant
> MARTIN KAO