**KOBAYASHI SUGITA & GODA, LLP**

DAVID M. LOUIE        2162
JESSE W. SCHIEL       7995
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone:  (808) 535-5700
Facsimile:  (808) 535-5799
E-mail:  dml@ksglaw.com; jws@ksglaw.com

Attorneys for Movant
PACMAR TECHNOLOGIES LLC f/k/a
MARTIN DEFENSE GROUP, LLC f/k/a
NAVATEK LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>   vs.<br><br>MARTIN KAO,<br><br>      Defendant. | CR. NO. 21-00061 LEK<br><br>MOVANT PACMAR TECHNOLOGIES LLC'S **SUPPLEMENTAL MEMORANDUM** IN SUPPORT OF RENEWED MOTION FOR RESTITUTION PURSUANT TO 18 U.S.C. § 3663A AND § 3664, FILED ON MARCH 10, 2026; CERTIFICATE OF SERVICE |

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................1

II.   ARGUMENT................................................................................2

    A.    PacMar's Attorneys' Fees Are Categorically Recoverable Under the MVRA ..................................................................................2

        1.    The Ninth Circuit Adopts a Broad View of Recoverable Investigation Costs....................................................................2

        2.    *Lagos* Preserves PacMar's Fees — It Does Not Limit Them.....4

        3.    Both Investigations Were Criminal Grand Jury Proceedings.....5

        4.    The Court Has Already Determined PacMar Is Entitled to Restitution ................................................................................5

    B.    The Applicable Legal Standard Requires Reasonable Approximation, Not Line-by-Line Precision..................................................................6

        1.    Preponderance of the Evidence Means Reasonable Approximation ...........................................................................6

        2.    PacMar's Submission Is Not a "Back-of-the-Envelope" Approximation ...........................................................................7

        3.    The MVRA's Mandatory Framework Makes Denial a Last Resort .....................................................................................8

    C.    PacMar's Submission Satisfies the Applicable Standard ....................9

        1.    The Ninth Circuit Has Endorsed Exactly This Type of Affidavit ....................................................................................9

        2.    Sworn Declarations from the Billing Attorney, Combined with Invoices, Are Sufficient ..........................................................10

        3.    Percentage-Based Allocation Is an Accepted Methodology ....11

        4.    Block Billing Reduces an Award; It Does Not Eliminate One 13

        5.    PacMar Has Already Implemented the "Reasonable Solution" Courts Require ......................................................................14

    D.    Denial With Prejudice Is Inappropriate and Inconsistent With the MVRA's Mandatory Framework......................................................15

III.    CONCLUSION.......................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dolan v. United States,*
  560 U.S. 605 (2010)....................................................................................8, 16

*In re Sealed Case,*
  702 F.3d 59 (D.C. Cir. 2012)...............................................................................7

*Lagos v. United States,*
  584 U.S. 577 (2018)..............................................................................2, 4, 5

*United States v. Afriyie,*
  27 F.4th 161 (2d Cir. 2022) ..............................................................................5, 14

*United States v. Amato,*
  540 F.3d 153 (2d Cir. 2008) .........................................................................10, 15

*United States v. Anderson,*
  741 F.3d 938 (9th Cir. 2013) ...............................................................................8

*United States v. Avenatti,*
  No. (S1) 19 Cr. 373 (PGG), 2022 WL 452385 (S.D.N.Y. Feb. 14,
  2022), *aff'd*, 81 F.4th 171 (2d Cir. 2023) ......................................................13, 14

*United States v. Battista,*
  575 F.3d 226 (2d Cir. 2009) ...............................................................................13

*United States v. Cardozo,*
  68 F.4th 725 (1st Cir. 2023).............................................................................7, 11

*United States v. Dadyan,*
  76 F.4th 955 (9th Cir. 2023) ...............................................................................6

*United States v. Donaghy,*
  570 F. Supp. 2d 411 (E.D.N.Y. 2008)...............................................................11

*United States v. Eyraud,*
  809 F.3d 462 (9th Cir. 2015) ............................................................................3, 4

iii

*United States v. Ferdman*,
  779 F.3d 1129 (10th Cir. 2015) ....................................................7, 9, 15

*United States v. Fogel*,
  494 F. Supp. 2d 136 (D. Conn. 2007) ...................................................12

*United States v. Gordon*,
  393 F.3d 1044 (9th Cir. 2004) .............................................................3, 4

*United States v. Gupta*,
  925 F. Supp. 2d 581 (S.D.N.Y. 2013) ...................................................12

*United States v. Gushlak*,
  728 F.3d 184 (2d Cir. 2013) ....................................................................6

*United States v. Holmes*,
  673 F. Supp. 3d 1049 (N.D. Cal. 2023) ..................................................8

*United States v. Kennedy*,
  643 F.3d 1251 (9th Cir. 2011) .................................................................6

*United States v. Manlapaz*,
  825 F. App'x 109 (4th Cir. 2020) ............................................................7

*United States v. Savoie*,
  985 F.2d 612 (1st Cir. 1993) ...................................................................7

*United States v. Waknine*,
  543 F.3d 546 (9th Cir. 2008) ...................................................3, 6, 9, 10

**Statutes**

18 U.S.C. § 3663A .....................................................................................1

18 U.S.C. § 3663A(a)(1) ......................................................................8, 15

18 U.S.C. § 3663A(b)(4) .....................................................................2, 3, 4

18 U.S.C. § 3663A(c)(3)(B) ................................................................9, 15

18 U.S.C. § 3664 ........................................................................................1

18 U.S.C. § 3664(e) ...................................................................................6

**MOVANT PACMAR TECHNOLOGIES LLC'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR RESTITUTION PURSUANT TO 18 U.S.C. § 3663A AND § 3664, FILED ON <u>MARCH 10, 2026</u>**

## I.    INTRODUCTION

Pursuant to the Court's Electronic Order of April 30, 2026 [Dkt. 197] (the "**EO**"), PACMAR TECHNOLOGIES LLC f/k/a MARTIN DEFENSE GROUP, LLC f/k/a NAVATEK LLC ("**PacMar**") respectfully submits this Supplemental Memorandum in support of its Renewed Motion for Restitution [Dkt. 190] ("**Renewed Motion**").

The EO directs PacMar to address the concerns raised at the April 30, 2025 hearing when the Court denied PacMar's prior request without prejudice. Those concerns centered on whether PacMar's documentation was sufficiently specific to allow the Court to determine an appropriate restitution amount. Defendant Martin Kao's ("**Defendant Kao" or "Kao**") position — then and now — is that PacMar cannot provide that specificity and that its Renewed Motion should therefore be denied with prejudice.

Kao is wrong on both the law and the record. The Renewed Motion already provides what the law requires: a sworn declaration from Preston Burton, the lead Buckley LLP partner who directed all of the work, offering a professional estimate grounded in firsthand knowledge of both investigations (the "**Burton Declaration**"), supported by highlighted invoices and two independent

methodologies producing corroborating figures. Under the Ninth Circuit's and every other circuit's interpretation of the Mandatory Victims Restitution Act ("**MVRA**"), this submission is sufficient for several reasons.

First, PacMar's attorneys' fees are categorically recoverable under the MVRA — the Ninth Circuit has adopted a broad view of recoverable investigation costs, and the Supreme Court's decision in *Lagos v. United States* expressly preserves, rather than limits, recovery for fees incurred in response to government grand jury subpoenas.

Second, the applicable legal standard does not require line-by-line precision; it requires reasonable approximation supported by sound methodology.

Third, PacMar's submission — the Burton Declaration combined with highlighted invoices and two corroborating calculations — is precisely the evidence that the Ninth Circuit and other courts have found sufficient to support a restitution award.

## II.    ARGUMENT

### A.    PacMar's Attorneys' Fees Are Categorically Recoverable Under the MVRA

#### 1.    The Ninth Circuit Adopts a Broad View of Recoverable Investigation Costs

Section 3663A(b)(4) of the MVRA requires restitution for "other expenses incurred during participation in the investigation or prosecution or attendance at

2

proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). The Ninth Circuit has "adopted a '*broad* view of the restitution authorization [for investigation costs],' holding that 'investigation costs — including attorneys' fees — incurred by private parties as a direct and foreseeable result of the defendant's wrongful conduct may be recoverable.'" *United States v. Eyraud*, 809 F.3d 462, 468 (9th Cir. 2015) (citation omitted) (emphasis in original). To qualify, fees must be "reasonably necessary" to aid in the investigation or prosecution. *United States v. Waknine*, 543 F.3d 546, 559 (9th Cir. 2008). Congress's intent was that courts "engage in an expedient and reasonable restitution process, with uncertainties resolved with a view toward achieving fairness to the victim." *United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir. 2004).

In *Gordon*, the Ninth Circuit specifically affirmed restitution for over $1 million in investigation costs where those "costs were incurred in response to five grand jury subpoenas and a number of government requests requiring [the victim] to analyze vast amounts of documentation and electronic information." *Id.* at 1057. This is precisely PacMar's situation: Buckley was engaged specifically to respond to grand jury subpoenas from the USAO for the District of Hawaii and the USAO for the District of Columbia, and the highlighted invoice entries in Exhibit C to the Renewed Motion reflect work related to document collection, review, production,

3

and privilege screening in connection with those subpoenas. Declaration of Preston Burton in support of the Renewed Motion ("**Burton Decl**.") ¶¶ 2, 8.

*Eyraud* extended *Gordon*, holding that fees incurred during the victim's "initial criminal investigation alongside the FBI" and "during the grand jury proceedings" are covered under § 3663A(b)(4). 809 F.3d at 468. Together, *Gordon* and *Eyraud* confirm that attorneys' fees incurred by a victim to assist a government criminal investigation are recoverable where reasonably necessary and directly tied to the investigation or prosecution.

### 2.    *Lagos* Preserves PacMar's Fees — It Does Not Limit Them

*Lagos v. United States* holds that Section 3663A(b)(4)'s reference to "investigation" is limited to *government* investigations and criminal proceedings — meaning fees incurred in a victim's purely private, self-initiated internal investigation do not qualify. 584 U.S. 577, 581–82 (2018). The Supreme Court expressly preserved recovery for fees incurred "testify[ing] before a grand jury" and attending criminal proceedings. *Id.* at 582.

PacMar did not retain Buckley to conduct a private investigation. *See* Burton Decl. ¶ 2. PacMar retained Buckley because it was served with compulsory grand jury subpoenas — by the USAO for the District of Hawaii, and by the USAO for the District of Columbia. *See id.* ¶ 5. The government came to PacMar; PacMar did not seek out the government. *See id.* Buckley's work responding to those subpoenas is

the paradigm case *Lagos* preserved. *Lagos* thus supports PacMar's claim; it does not limit it.

### 3.    Both Investigations Were Criminal Grand Jury Proceedings

In *United States v. Afriyie*, the Second Circuit drew a line between recoverable work (USAO criminal investigation) and non-recoverable work (parallel SEC civil investigation). 27 F.4th 161, 169 (2d Cir. 2022).

That line does not cut against PacMar. Both the Hawaii and D.C. investigations were criminal grand jury proceedings — both resulted in federal criminal charges and guilty pleas by Defendant Kao. The allocation question here is one of apportionment between two *covered* investigations, not between a covered and an uncovered one. Because every dollar at issue was incurred in connection with one or both government criminal investigations, the threshold coverage requirement under *Afriyie* is satisfied for all claimed amounts.

### 4.    The Court Has Already Determined PacMar Is Entitled to Restitution

At the April 30, 2025 hearing, the Court confirmed unequivocally that "I do think [PacMar is] legally entitled to certain restitution." *See* Exhibit B to the Renewed Motion at 23:21–24. Kao has not challenged PacMar's victim status or its entitlement to some amount of restitution. *See* Kao's MIO to the Renewed Motion

5

[Dkt. 195] ("**Kao's MIO**") at 3–4. The threshold question is resolved. What remains is the quantum.

### B. The Applicable Legal Standard Requires Reasonable Approximation, Not Line-by-Line Precision

#### 1. Preponderance of the Evidence Means Reasonable Approximation

Any dispute as to the proper amount of restitution "shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e). Federal courts are unanimous that preponderance under the MVRA does not mean exact proof. It means reasonable approximation supported by sound methodology.

The Ninth Circuit has squarely held that the MVRA requires only "some reasonable certainty" about the amount of a victim's damages; "**mathematical precision" is not a "requirement**." *United States v. Kennedy*, 643 F.3d 1251, 1261 (9th Cir. 2011) (emphasis added). The government must provide evidence sufficient for the court to estimate "the full amount of the victim's losses with some reasonable certainty." *Id.* The district court "is entitled to draw reasonable inferences when arriving at its restitution calculation." *United States v. Dadyan*, 76 F.4th 955, 961 (9th Cir. 2023). Evidence used must possess "sufficient indicia of reliability to support its probable accuracy." *Waknine*, 543 F.3d at 557.

This standard is consistent across the circuits. *See United States v. Gushlak*, 728 F.3d 184, 195–96 (2d Cir. 2013) ("[T]he MVRA requires only a reasonable

6

approximation of losses supported by a sound methodology" and calculations need not be "mathematically precise," especially "in cases in which an exact dollar amount is inherently incalculable."); *United States v. Cardozo*, 68 F.4th 725, 734 (1st Cir. 2023) (emphasizing that the government's burden is "not a heavy one: as long as the court's order reasonably responds to some reliable evidence, no more is exigible."); *United States v. Savoie*, 985 F.2d 612, 617 (1st Cir. 1993) ("[S]o long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution."); *United States v. Ferdman*, 779 F.3d 1129, 1133 (10th Cir. 2015) (noting courts "may resolve restitution uncertainties with a view towards achieving fairness to the victim so long as [the court] still makes a reasonable determination of appropriate restitution *rooted in a calculation of actual loss*.") (emphasis in original); *In re Sealed Case*, 702 F.3d 59, 66 (D.C. Cir. 2012) (A restitution amount need not "be proven with exactitude" and "determining the dollar amount of a victim's losses . . . will inevitably involve some degree of approximation, which is not fatal."); *United States v. Manlapaz*, 825 F. App'x 109, 118 (4th Cir. 2020) (The MVRA "does not require absolute precision so long as there is a basis for reasonable approximation.").

### 2. PacMar's Submission Is Not a "Back-of-the-Envelope" Approximation

Kao may suggest that PacMar's percentage-based methodology is the kind of arbitrary "back-of-the-envelope" approach the Ninth Circuit cautioned against in

7

*United States v. Anderson*, 741 F.3d 938, 953 (9th Cir. 2013). *Anderson* is inapposite. There, the court vacated a restitution order where losses were simply "not quantifiable to any degree of certainty." *Id.* at 954. Absent from that record were what PacMar has provided here: actual billing records, a sworn declaration from the lead billing attorney explaining the methodology, and two independent calculations producing corroborating figures. Similarly, the district court in *United States v. Holmes* denied a $500,000 request for legal fees where no "billing records or other supporting documents" were submitted at all. 673 F. Supp. 3d 1049, 1064 (N.D. Cal. 2023).

PacMar's submission is the direct opposite of *Holmes*. The distinction between what courts reject and what they approve is not precision versus approximation; it is arbitrary guesswork versus reasonable estimation grounded in evidence. PacMar's submission is the latter.

### 3. The MVRA's Mandatory Framework Makes Denial a Last Resort

The MVRA commands that "the court *shall* order . . . that the defendant make restitution to the victim." 18 U.S.C. § 3663A(a)(1). The Supreme Court in *Dolan v. United States* confirmed that the MVRA "places primary weight upon, and emphasizes the importance of, imposing restitution upon those convicted of certain federal crimes," and that procedural difficulties cannot defeat that mandate. 560 U.S. 605, 612 (2010).

8

When documentation presents challenges, the Tenth Circuit in *Ferdman* identified three tools available to the Court: (1) request additional evidence, (2) hold an evidentiary hearing, or (3) only as a narrow last resort under § 3663A(c)(3)(B), decline to order restitution where determining the amount would complicate or prolong sentencing to a degree that outweighs the restitution interest. 779 F.3d at 1133. That complexity exception was designed for the exceptional case — not for the routine challenge of apportioning fees between two concurrent criminal investigations conducted by the same team on the same documents. Under *Ferdman*, where PacMar has provided the Court with a sworn declaration, invoices, and two corroborating calculations, denial with prejudice is simply not an available option.

C.      **PacMar's Submission Satisfies the Applicable Standard**

1.      **The Ninth Circuit Has Endorsed Exactly This Type of Affidavit**

The Ninth Circuit in *Waknine* vacated a restitution order because the victim submitted only bare one-page summaries listing an attorney's name and a total dollar amount, with no description of time spent, activities performed, or credentials. 543 F.3d at 557. The court drew a narrow limit on that holding: "victim affidavits will generally provide sufficient, reliable evidence to support a restitution order. In this case, however, the affidavits were too summary and too conclusory to be sufficiently reliable." *Id.* The court added, explicitly: "**A sufficiently detailed affidavit doubtless would suffice in most cases**." *Id.* at 558 (emphasis added).

9

The Burton Declaration is the "sufficiently detailed affidavit" *Waknine* endorses. Burton was the lead partner who directed all of Buckley's representation of PacMar in both investigations. *See* Burton Decl. ¶ 2. He reviewed the invoices, consulted with the two remaining team members who worked on both PacMar matters, and reviewed correspondence with the government regarding document productions. *Id.* ¶¶ 3, 7. He identified that at least 90% of the total invoiced work was related to one or both grand jury investigations, and that at least 25% of that work was attributable to the USAO Hawaii investigation, yielding a figure of at least $192,963.38. *Id.* ¶ 7. He provided a corroborating alternative calculation. *Id.* ¶¶ 8–9. He attested under penalty of perjury that both figures likely understate the true Hawaii amount. *Id.* ¶ 9. This is not the conclusory one-page summary *Waknine* rejected. It is a detailed, sworn professional assessment from the person best positioned to make it.

### 2. Sworn Declarations from the Billing Attorney, Combined with Invoices, Are Sufficient

The Second Circuit in *United States v. Amato* upheld a restitution award of attorneys' fees and accounting costs where those amounts were well substantiated in a memorandum supported by a sworn declaration by a member of the law firm as well as invoices. 540 F.3d 153, 159 (2d Cir. 2008). The court also noted that the MVRA makes "restitution a mandatory part of the sentences imposed for certain categories of offenses" and thus "[i]t requires district courts to reimburse the victim"

10

where the statute's conditions are met. *Id.* This is exactly PacMar's Renewed Motion submission — the Burton Declaration (a sworn statement by the Buckley engagement partner) supported by Exhibit C (the highlighted Buckley invoices).

The First Circuit in *Cardozo* went further, holding that billing statements "prepared in the ordinary course of professional practice" need not even be sworn to be reliable for restitution purposes: "We are aware of no authority that requires a billing statement, prepared in the ordinary course of professional practice, to be sworn before it can be deemed reliable." 68 F.4th at 735. **PacMar has done more than *Cardozo* required** — the Burton Declaration is sworn under penalty of perjury and is supported by the underlying invoices.

### 3.    Percentage-Based Allocation Is an Accepted Methodology

The leading case directly endorsing percentage-based allocation for MVRA restitution is *United States v. Donaghy*, 570 F. Supp. 2d 411 (E.D.N.Y. 2008). In *Donaghy*, the NBA sought restitution for attorneys' fees incurred assisting the government in the referee-corruption investigation. The billing records covered work that partly related to assisting the government and partly to other matters, and each attorney "explained that only a portion of a billing entry was dedicated to assisting the government, and . . . gave his or her best estimate as to how many hours are recoverable." *Id.* at 431. The court upheld a 25% allocation methodology, finding the affidavits "while not extremely detailed" sufficient to establish a reasonable

11

estimate by a preponderance, and noted that "uncertainties with respect to the amount in question should be resolved in favor of the victim." *Id.* at 423, 432. The court also applied a 33% proportional multiplier to one attorney's billing where precise attribution was impossible. *Id.* at 435.

This is Burton's Declaration in a nutshell: the engagement partner who directed the work explained, on the basis of firsthand knowledge, what percentage of the overlapping efforts was attributable to the Hawaii investigation.

*United States v. Gupta*, 925 F. Supp. 2d 581 (S.D.N.Y. 2013) reinforces this approach. In *Gupta*, Judge Rakoff reviewed 542 pages of billing records for fees incurred across multiple parallel matters, applied a percentage-based exclusion of approximately 9–10% of entries he found non-necessary, and awarded approximately 90% of the total requested. *Id.* at 584, 587–88. The key was that the records identified the nature of the work with "sufficient particularity to assess what was done, how it was done, and why it was done." *Id.* at 587. The Burton Declaration supplies precisely that particularity for PacMar's highlighted entries.

Similarly, in *United States v. Fogel*, 494 F. Supp. 2d 136 (D. Conn. 2007), the court awarded restitution for attorneys' fees incurred by a victim insurer in a multi-defendant fraud, even though the insurer could not allocate the fees by individual defendant, because the victim documented total fees, demonstrated their connection

12

to the criminal investigation as a whole, and allocated a proportionate share. PacMar has done exactly the same.

Finally, *United States v. Battista*, 575 F.3d 226, 233–34 (2d Cir. 2009), affirmed a methodology in which a district court "parsed out" compensable expenses from total billing using a reasonable approach — it did not require every billing entry to be independently verified or contemporaneously segregated into separate matter files.

### 4.    Block Billing Reduces an Award; It Does Not Eliminate One

Block billing warrants reduction in the MVRA context; it does not justify a zero award. In *United States v. Avenatti*, the district court found that the victim's counsel's block billing "significantly handicapped" its ability to separate recoverable from non-recoverable work. *United States v. Avenatti,* No. (S1) 19 Cr. 373 (PGG), 2022 WL 452385, at *10 (S.D.N.Y. Feb. 14, 2022), *aff'd,* 81 F.4th 171 (2d Cir. 2023). But the court did not deny the victim's request outright. Instead, it awarded approximately $259,800 for entries unambiguously traceable to recoverable work, and the Second Circuit affirmed. *See id.*

PacMar's situation is materially stronger than *Avenatti*'s for two reasons. First, the allocation issue here is not recoverable versus non-recoverable work — both the Hawaii and D.C. investigations were criminal grand jury proceedings, so every dollar at issue was incurred in a government-compelled criminal proceeding.

13

The only question is apportionment between two fully covered investigations. Second, PacMar's showing is stronger than the showing in *Avenatti*: in addition to billing records, PacMar submitted a sworn declaration from the engagement partner explaining, on the basis of firsthand professional knowledge, the basis for the allocation estimate. That declaration bridges the gap that block billing creates.

### 5. PacMar Has Already Implemented the "Reasonable Solution" Courts Require

When the Second Circuit in *Afriyie* confronted billing records containing commingled entries for recoverable (USAO criminal) and non-recoverable (SEC civil) work, it did not vacate the entire fee award. 27 F.4th 161. It remanded with instructions to the district court to "devise a reasonable solution concerning these commingled billing items." *Id.* at 172. A sworn declaration from the engagement partner allocating the commingled work on the basis of firsthand knowledge — combined with a separate percentage methodology keyed to identified invoice entries — is exactly such a reasonable solution.

PacMar has not asked this Court to accept bare billing records and extrapolate. PacMar has provided the Burton Declaration explaining, entry-by-entry category by entry-by-entry category, what the work consisted of and why a conservative allocation of at least 25% to the Hawaii investigation is well-supported. This is the methodology courts require.

14

**D.    Denial With Prejudice Is Inappropriate and Inconsistent With the MVRA's Mandatory Framework**

Kao requests that PacMar's Renewed Motion be denied in its entirety with prejudice. *See* Kao MIO at 8. That request is contrary to the MVRA's mandatory framework, the weight of authority, and the Court's own prior findings.

The statute commands that "the court *shall* order . . . that the defendant make restitution to the victim." 18 U.S.C. § 3663A(a)(1) (emphasis added). The Second Circuit in *Amato* was clear that the MVRA makes "restitution a mandatory part of the sentences imposed for certain categories of offenses" and thus "[i]t requires district courts to reimburse the victim" where the statute's conditions are satisfied. 540 F.3d at 159. The Court has already determined, and Kao has not disputed, that PacMar is a victim of Kao's criminal offenses. The USPO confirmed PacMar's victim status. *See* Dkt. 177, Ex. 1 (USPO's Victim Finding). The Court itself stated unequivocally at the 2025 hearing: "I do think [PacMar is] legally entitled to certain restitution." *See* Exhibit B to the Renewed Motion at 23:21–24.

Under *Ferdman*'s three-tool framework, denial with prejudice is not the Court's first, second, or even third option when documentation presents challenges. It is a narrow last resort reserved for cases of genuine complexity where the burden of determination would be disproportionate. 779 F.3d at 1133; 18 U.S.C. § 3663A(c)(3)(B). Determining the proportion of grand jury subpoena-response fees between two overlapping criminal investigations does not approach that threshold,

15

particularly where PacMar has supplied a sworn declaration, highlighted invoices, and two independent corroborating calculations.

Denying PacMar's claim with prejudice because the billing records are not amenable to line-by-line disaggregation would effectively nullify the MVRA's mandatory restitution requirement for any victim whose counsel represented it in multiple concurrent government investigations — a result that is inconsistent with the statute, *Dolan*, and the Court's own conclusion that PacMar is legally entitled to restitution.

## III.   CONCLUSION

For the foregoing reasons, PacMar respectfully requests that this Court grant its Renewed Motion for Restitution and order Defendant Kao to pay restitution to PacMar in the amount of **$192,963.38**, or, alternatively, no less than **$165,000.00**.

DATED: Honolulu, Hawaii, May 14, 2026.

/s/ Jesse W. Schiel
DAVID M. LOUIE
JESSE W. SCHIEL

Attorneys for Movant
PACMAR TECHNOLOGIES LLC
f/k/a MARTIN DEFENSE GROUP,
LLC f/k/a NAVATEK LLC

16